Randall WILLIFORD (Deceased) *v.* CITY OF
NORTH LITTLE ROCK

CA 97-1496 969 S.W.2d 687

Court of Appeals of Arkansas
Division IV
Opinion delivered June 3, 1998
[Petition for rehearing denied July 1, 1998.]

*Law Offices of James F. Swindoll*, by: *James F. Swindoll*, for appellant.

*J. Chris Bradley*, for appellee.

JUDITH ROGERS, Judge. This is an appeal from the Workers' Compensation Commission's decision finding that appellant failed to prove that the deceased employee's work activity was the major cause of his fatal heart attack. On appeal, appellant argues that there is no substantial evidence to support the Commission's denial of benefits. We agree and reverse and remand for an award of benefits not inconsistent with this opinion.

The record reveals that Randy Williford had been a firefighter for the City of North Little Rock for twenty-two years. On July 6, 1995, he was taking the Firefighters Encounter and Agility Test (FEAT). The test required firefighters to unroll and roll up a fifty-foot section of hose, drag a hundred-foot section of hose weighing fifty pounds one-hundred feet, climb a ladder, and crawl through an attic space. While in the attic, the firefighter is required to use a sledgehammer to vent the roof. The firefighter must then put on an air pack that weighs thirty-five to forty pounds, carry an additional section of hose, and climb up and down three flights of stairs. Finally, the firefighter is required to drag a dummy that weighs 165 pounds a distance of sixty-five feet. All of the above listed activities have to be completed by the

firefighter within twelve minutes. Also, part of the test has to be performed in a rubberized coat, pants, boots, and helmet.

At the time that Mr. Williford performed the test, it was July and extremely hot and humid. After performing this test, Mr. Williford began experiencing severe back pain and nausea. His wife found him at home lying on the floor in pain and incoherent. Mr. Williford was taken to St. Vincent Hospital and admitted. Within forty-eight hours, Mr. Williford had a heart attack and died in the hospital at the age of 43. Mr. Williford's body was exhumed and an autopsy was performed to determine the cause of death. Subsequently, Mr. Williford's wife presented this claim asserting that the FEAT test on July 6 was the major cause of her husband's heart attack. The administrative law judge found that Mr. Williford's activity on July 6 was the major cause of his heart attack. The Commission reversed the ALJ's decision, denying benefits because it found that appellant failed to prove that his activity on July 6 was the major cause of his heart attack.

On appeal, appellant argues that there is no substantial evidence to support the Commission's denial of benefits. We agree.

 When reviewing decisions from the Workers' Compensation Commission, the court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirms if supported by substantial evidence. *Crawford v. Pace Indus.*, 55 Ark. App. 60, 929 S.W.2d 727 (1996) (citing *Welch's Laundry & Cleaners v. Clark*, 38 Ark. App. 223, 832 S.W.2d 283 (1992)). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Crawford, supra* (citing *City of Fort Smith v. Brooks*, 40 Ark. App. 120, 842 S.W.2d 463 (1992)); *see also, Couch v. First Nat'l Bank of Newport*, 49 Ark. App. 102, 898 S.W.2d 57 (1995). A decision by the Workers' Compensation Commission should not be reversed unless it is clear that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Crawford, supra* (citing *Silvicraft, Inc. v. Lambert*, 10 Ark. App. 28, 661 S.W.2d 403 (1983)). Where the Workers' Compensation Commission has denied a claim, "substantial evidence" requires the appellate court to affirm if the Commission's opinion displays

a substantial basis for the denial of relief. *Bussell v. Georgia-Pacific Corp.*, 48 Ark. App. 131, 891 S.W.2d 75 (1995). Despite this stringent standard of review, we have recognized:

> Those standards must not totally insulate the Commission from judicial review and render this court's function in these cases meaningless. We will reverse a decision of the Commission where convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission.

*Wade v. Mr. C. Cavenaugh's*, 25 Ark. App. 237, 242, 756 S.W.2d 923, 925 (1988) (citing *Boyd v. General Industries*, 22 Ark. App. 103, 733 S.W.2d 750 (1987)). With the above standard of review in mind, this court assesses the evidence to see if reasonable persons could reach the same conclusion.

Arkansas Code Annotated section 11-9-102(5)(A)(iv) (Supp. 1997) provides that a compensable injury means a heart, cardiovascular injury, accident, or disease as set out in section 11-9-114. Arkansas Code Annotated section 11-9-114(a) provides:

> (a) A cardiovascular, coronary, pulmonary, respiratory, or cerebrovascular accident or myocardial infarction causing injury, illness, or death is a compensable injury only if, in relation to other factors contributing to the physical harm, an accident is the major cause of the physical harm.

In denying benefits, the Commission interpreted Dr. Michael L. Bierle's deposition testimony as concluding that the deceased's initial laboratory test data did not support a diagnosis of a myocardial infarction on admission. It also found that Dr. Bierle's testimony raised serious doubt as to whether the deceased's heart attack was in any way related to the physical exertion on July 6. The Commission placed great weight on the admission records and Dr. Bierle's testimony.

However, when we review Dr. Bierle's deposition, it is apparent that the Commission ignored crucial portions of his testimony concerning the precise issue of the major cause of the deceased's heart attack. The record reveals that Dr. Bierle was unaware of the deceased's activities on the day of his admission. Thus, he could not say whether the activities that Mr. Williford

had engaged in on the day he was admitted were the major cause of the heart attack. He also could not say that the deceased's pre-existing physical condition was the major cause of his heart attack. In short, he offered no opinion on the issue of the major cause of the deceased's heart attack. The laboratory data relied on by the Commission only indicated what Mr. Williford's condition was at the time he arrived at the hospital; it did not indicate whether Mr. Williford's activities earlier that day were the major cause of his subsequent heart attack. Also, Mr. Williford's admission record dated July 6, 1995, indicated that when he arrived at the hospital there was evidence of congestive heart failure on his chest x-rays.

The Commission also noted that Dr. Frank J. Peretti (the pathologist who performed the autopsy) found several physical problems with the deceased's heart. The record does reveal that Dr. Peretti found chronic pulmonary disease, hypertension, chronic renal insufficiency, and he noted the deceased's history of insulin dependency. The Commission opined:

> As we interpret Dr. Peretti's deposition testimony in its entirety, we understand Dr. Peretti's autopsy to have indicated that Mr. Williford's health in general (and the condition of his heart and his coronary arteries specifically) was so far compromised by pre-existing medical conditions by July 6, 1995, that Mr. Williford was likely to experience a myocardial infarction at any time with no precipitating event, and that his condition was so far compromised even the slightest exertion could induce an infarction.

While giving credence to Dr. Peretti, the Commission apparently, however, failed to consider Dr. Peretti's entire report. In the autopsy report Dr. Peretti concluded:

> In summary, this individual had evidence of severe pre-existing cardiovascular disease and a 20 year history of insulin dependent diabetes mellitus. He was undergoing rigorous physical exercise which was required to maintain his position as a North Little Rock Fireman. These exercises are responsible for putting excessive stress on his already compromised heart. It is my opinion based on reasonable medical certainty that he sustained his myocardial infarction during the physical workout as documented by his initial clinical presentation and autopsy findings. It is clear

that the strenuous workout was the major cause in precipitating the myocardial infarction.

In Dr. Peretti's deposition testimony, he said:

Well, you have to take the whole situation in perspective. Here you have a man before he began his testing allegedly had no cardiovascular complaints, such as chest pains, okay? He goes in there, he's under the stress doing all these exercises for the agility test, and then develops all the symptomology.

The heart attack is clearly within twenty-four hours, it's an evolving heart attack. And I think, you know, my opinion is, with a reasonable degree of medical certainty, is that the strenuous workout was about ninety-five to a hundred percent (95%-100%) contributed to it, because he was fine beforehand. He was fine. He was walking around, no chest pains, no complaints.

After reviewing the entire record, we do not believe that reasonable minds could reach the same conclusion as the Commission with this persuasive evidence before them. Thus, we find that there is no substantial basis for the Commission's decision that Mr. Williford's activity on July 6, 1995, was not the major cause of his heart attack.

Reversed and remanded for an award of benefits not inconsistent with this opinion.

AREY and BIRD, JJ., agree.