HOPE LIVESTOCK AUCTION COMPANY *v.*
Johnny KNIGHTON and CNA Insurance Company

CA 98-1510                                   992 S.W.2d 826

Court of Appeals of Arkansas
Division IV
Opinion delivered June 23, 1999

*Howell, Trice, & Hope, P.A.*, by: *Jason D. Files*, for appellant.

*Wright & Burke*, by: *William Randall Wright*, for appellee Johnny Knighton.

*Dunn, Nutter, Morgan & Shaw*, by: *Nelson V. Shaw*, for appellee CNA Insurance Company.

MARGARET MEADS, Judge. This is the second appeal in this workers' compensation case. In the first appeal, because the Commission conducted an extrajudicial review of documentation not introduced into evidence, this court reversed and remanded the case to the Commission to make further findings. *See Hope Livestock Auction Co. v. Knighton*, 62 Ark. App. 74, 966 S.W.2d 943 (1998). On remand, the Commission found that appellee Johnny Knighton had met his burden of proof, that the statutory requirements of Ark. Code Ann. § 11-9-113 (Repl. 1996) had been satisfied, and that Knighton was entitled to disability benefits for his Bipolar I Disorder. Appellant appeals, arguing that there is not substantial evidence to support the Commission's findings (1) that Knighton's alleged mental condition is compensable; (2) that Knighton is entitled to additional temporary total disability benefits; and (3) that Knighton's subsequent November 1995 aggravation was temporary in effect. We disagree; therefore, we affirm the decision of the Commission.

Johnny Knighton worked full time for appellant Hope Livestock Auction from 1978 until July 3, 1996. Rockwood Insurance Company was appellant's workers' compensation carrier until it went into receivership in 1991, at which time the Arkansas Property and Casualty Guaranty Fund took over the defense of any claims against Rockwood. Appellee CNA Insurance Company provided appellant's workers' compensation insurance from January 1, 1995, until December 31, 1995.

Knighton suffered several compensable work-related injuries during his employment with appellant. The first was an injury to one of his knees in 1981 when a horse fell on him, necessitating surgery. He also suffered back injuries in 1985 and 1986. Each of

the back injuries required surgery, which was performed by Dr. George Bohmfalk. In 1990, Knighton was experiencing nerve damage in his hip and lower back as a result of his previous injuries, as well as numbness in his right shin. Dr. Bohmfalk performed yet a third back surgery, for which appellant paid. After the third surgery, Knighton continued to work for appellant, although Dr. Bohmfalk instructed him to stop riding horses and roping, and to scale back his activities at work.

In 1991, Knighton was treated at the Baptist Medical Center pain clinic for continuing back pain, and he was given medication to combat depression. He was also seen at a headache clinic in Houston, where a psychiatrist diagnosed him as having manic-depressive illness and placed him on Lithium. Dr. Edward Tobey, his treating psychiatrist since 1994, later amended the manic-depressive diagnosis to Bipolar I Disorder.

Knighton sustained another accident in November 1995, when a cow knocked him against a fence and stepped on his back and legs. He testified that he was "stove up" and in "absolute agony" due to the pain from this incident and that he consulted Dr. Bohmfalk after the accident. Dr. Bohmfalk told him that he was just shaken up. Knighton said that he suffered no new back or leg problems, missed no work, and was over the incident in about two days. In its first decision, filed July 24, 1997, the Commission determined that Knighton's bipolar disorder was a compensable injury under Ark. Code Ann. § 11-9-113 because it was caused by his compensable 1990 injury, although it had not manifested itself or been diagnosed until 1994.

In reaching its decision, the Commission consulted information not contained in the record, specifically the most current issue of the Diagnostic and Statistical Manual of Mental Disorders (DSM), in determining that Knighton had satisfied the requirements of the statute. We reversed and remanded that decision, because the extrajudicial review of documentation not introduced into evidence was error. *Hope Livestock Auction Co. v. Knighton, supra.*

On remand, the Commission ordered the administrative law judge (ALJ) to supplement the record with pertinent sections of

the DSM. On August 24, 1998, pursuant to the Commission's order, the ALJ supplemented the record, incorporating by reference the pertinent provisions of the DSM-IV concerning Bipolar I Disorder. In its October 6, 1998, opinion, the Commission again determined that appellee's diagnosis met the criteria established in the DSM-IV and that his mental condition was compensable.

Appellant does not contest the diagnosis of appellee's mental disorder as Bipolar I, but argues only that there was not substantial evidence that the diagnosis met the criteria established in the most current issue of the DSM. We disagree. In support of its finding that Knighton's diagnosis met the DSM criteria, the Commission relied on Dr. Tobey's progress notes and cited the portions of his deposition in which he opined that Knighton was suffering from Bipolar I Disorder, which he described as follows:

> Bipolar I is classic manic-depressive illness with cyclic mood swings, a severe depressive illness, depressive described as feeling of dysphoria, low motivation, lack of energy, could have either sleeping too much or sleeping too little, appetite changes, weight changes, problems with attention or concentration which are significant enough to either cause social, functional, or interpersonal impairment. The duration has to be of at least two weeks of duration. In manic-depressive illness you add on manic symptoms, which are severe difficulty with insomnia, racing thoughts, racing speech, increased kinetic activity or psychomotor activity, restlessness, pacing, it can have excessive spending, impulsiveness that happens with people. They also can get grandiose, think that they are smarter than they are or they can do more things than their capabilities are. And again, it's significant enough to cause social, occupational, and interpersonal impairment. Bipolar II Disorder is probably a lesser disorder where there's cyclic mood swings downward and depressive illness, and little peaks of manic symptoms but not to the near severity or the significant impairment seen with Bipolar I Disorder.

In reviewing the Commission's decision on a question of fact, we will affirm the Commission if its decision is supported by substantial evidence; substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Branscum v. RNR Constr. Co.*, 60 Ark. App. 116, 959

S.W.2d 429 (1998). The evidence is viewed in the light most favorable to the findings of the Commission and is given its strongest probative value in favor of the Commission's decision. *Barrett v. Arkansas Rehabilitation Servs.*, 10 Ark. App. 102, 661 S.W.2d 439 (1983). The question is not whether the appellate court might have reached a different conclusion from the one found by the Commission if it were reviewing the case *de novo*, or even whether the evidence would have supported a contrary finding. *Tyson Foods, Inc. v. Disheroon*, 26 Ark. App. 145, 761 S.W.2d 617 (1988). The Commission's decision should not be reversed unless it is clear that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Johnson v. Democrat Printing and Lithograph*, 57 Ark. App. 274, 944 S.W.2d 138 (1997).

■ ■ The question whether the diagnosis of a condition meets the criteria established in the DSM must ordinarily be one of fact, and the claimant has the burden of proof on this issue by a preponderance of the evidence. *Branscum v. RNR Constr. Co., supra*. The Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force; it must use its experience and expertise in translating expert medical testimony into findings of fact. *Oak Grove Lumber Co. v. Highfill*, 62 Ark. App. 42, 968 S.W.2d 637 (1998). It is the Commission's responsibility to draw inferences when the testimony is open to more than a single interpretation, whether controverted or uncontroverted; when it does so, its findings have the force and effect of a jury verdict. *Id.*

■ Arkansas Code Annotated section 11-9-113(a)(2) provides:

> No mental injury or illness under this section shall be compensable unless it is also diagnosed by a licensed psychiatrist or psychologist and unless the diagnosis of the condition meets the criteria established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders.

While a bare diagnosis, without an explanation of the characteristics of the mental illness, might not be sufficient to meet the requirements of section 11-9-113(a)(2), here Dr. Tobey, in both his deposition and progress notes, described Knighton's Bipolar I

Disorder in such detail that the Commission could easily make the finding that the diagnosis met the DSM-IV criteria. Although it would be preferable in cases of mental injury or illness for a psychiatrist or psychologist to correlate the basis of his opinion to the DSM criteria, we recognize the Commission's expertise and ability to translate medical testimony into findings of fact. We cannot say that the Commission's finding that Knighton's Bipolar I Disorder was a compensable work-related injury is not supported by substantial evidence.

Appellant next contends that Knighton is not entitled to temporary total disability benefits. In its brief, appellant cites *Arkansas State Hwy. and Transp. Dept. v. Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981), for the proposition that in order for a claimant to be entitled to temporary total disability benefits, he must show (1) that he remains in his healing period, and (2) that he is totally incapacitated to earn wages. Appellant argues that Knighton did not prove either of these requirements; therefore, he is not entitled to temporary total disability benefits. We do not agree.

Arkansas Code Annotated section 11-9-113(b)(1) provides, "Notwithstanding any other provision of this chapter, where a claim is by reason of mental injury or illness, the employee shall be limited to twenty-six (26) weeks of disability benefits." The term "healing period" is noticeably absent from this section. "Disability" is defined as "incapacity because of a compensable injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of the compensable injury." Ark. Code Ann. § 11-9-102(9) (Supp. 1997). With respect to the inability to earn wages, there was testimony from Knighton, his wife, Dr. Bohmfalk, and Dr. Tobey of Knighton's problems being around people and functioning in society. For example, in one of his manic phases, Knighton did not sleep for eighteen days and had to be admitted to the hospital and sedated. Once the Commission is presented with medical evidence of physical impairment and functional limitations, it must use its superior knowledge of industrial demands, limitations, and requirements to determine how a disability will affect the injured worker's ability to obtain or hold a job. *Ark. State Hwy. Dept. v. Breshears, supra.* There is substantial evidence to support

the Commission's award of twenty-six weeks of disability benefits pursuant to Ark. Code Ann. § 11-9-113(b)(1).

■ Appellant's last argument is that there is insufficient evidence to support the Commission's finding that Knighton's November 1995 injury was a temporary subsequent aggravation. We disagree. An aggravation is a new injury resulting from an independent incident. *Farmland Ins. Co. v DuBois*, 54 Ark. App. 141, 923 S.W.2d 883 (1996). A temporary aggravation of a preexisting condition is a compensable injury. *Gansky v. Hi-Tech Eng'g*, 325 Ark. 163, 924 S.W.2d 790 (1996). When an accidental injury aggravates a prior one, the one in whose employ the second injury occurs is liable for all of the consequences naturally flowing from that incident; and it is only when the employee suffers merely a recurrence of a former injury without an intervening cause that the employer at the time of the initial injury is liable for the recurring disability. *Bearden Lumber Co. v. Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983).

■ In this case, although the employer remained the same, the workers' compensation carrier changed. There is no question that there was an independent intervening cause for the November 1995 injury, and it is not disputed that appellee CNA is liable for all of the consequences naturally flowing from that incident, *i.e.*, Dr. Bohmfalk's bill for the office visit and any medication associated with that injury. However, there is no evidence in the record that this injury permanently aggravated Knighton's preexisting conditions. Knighton testified that he did not miss a day of work due to the November 1995 accident, and he suffered no lasting physical repercussions from the incident. Moreover, Dr. Bohmfalk testified that Knighton had no lasting effects from that accident. In short, there is nothing in the evidence to show that the November 1995 injury was anything other than a temporary aggravation, for which CNA is liable. Because the November 1995 accident was merely a temporary aggravation, Arkansas Property and Casualty Guaranty Fund remains liable for Knighton's preexisting conditions.

Affirmed.

ROBBINS, C.J., and NEAL, J., agree.