Jack ESTRIDGE, *Employee v.* WASTE MANAGEMENT;
Transportation Insurance Company;
and Second Injury Fund

00-662                                             33 S.W.3d 167

Supreme Court of Arkansas
Opinion delivered December 15, 2000

*Compton, Prewett, Thomas & Hickey, P.A.*, by: *Floyd M. Thomas, Jr.*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Judy Robinson Wilber* and *J. Andrew Vines*, for appellee Waste Management.

WH. "DUB" ARNOLD, Chief Justice.   Appellant Jack Estridge appealed the denial of benefits by the Workers' Compensation Commission regarding an injury to his back that he alleged occurred while in the employ of appellee Waste Management. The administrative law judge had determined that appellant sustained a compensable aggravation to his preexisting degenerative

condition for which he was entitled to benefits. After a reversal of that decision by the Commission, appellant appealed to the Arkansas Court of Appeals. The Court of Appeals affirmed the Commission's denial of benefits in an unpublished decision, CA 99-1208.

Appellant then petitioned this Court for review. Appellant contends that the decision by the Court of Appeals is in conflict with prior case law, and is therefore in error. We granted appellant's petition for review pursuant to Ark. Sup. Ct. R. 1-2(e). The issue on appeal is whether appellant proved that he sustained a compensable injury. We hold that he did and, therefore, reverse the Full Commission's decision to deny benefits, as well as the Court of Appeals decision to affirm the Commission.

*Standard of Review*

■ ■ Upon a petition for review, we consider a case as though it had been originally filed in this Court. *Maxey v. Tyson Foods, Inc.*, 341 Ark. 306, 18 S.W.3d 328 (2000); *Woodall v. Hunnicutt Construction*, 340 Ark. 377, 12 S.W.3d 630 (2000); *White v. Georgia-Pacific Corporation*, 339 Ark. 474, 6 S.W.3d 98 (1999); *Burlington Indus. v. Pickett*, 336 Ark. 515, 988 S.W.2d 3 (1999). We view the evidence in a light most favorable to the Commission's decision, and we uphold that decision if it is supported by substantial evidence. *Id.*; *Deffenbaugh Indus. v. Angus*, 313 Ark. 100, 852 S.W.2d 804 (1993). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Pickett*, 336 Ark. 515, 988 S.W.2d 3; *ERC Contr. Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998).

*Facts and Procedural History*

The evidence presented by the parties revealed the following events. Appellant, who at the time was in his mid-forties, reported a back injury after carrying and nearly dropping a railroad crosstie while on the job on September 28, 1994. He reported the incident to appellee Waste Management and was referred to Dr. Owens, who diagnosed appellant with a low back strain and radicular pain. This course of events is not in dispute.

Dr. Owens documented no objective medical findings to support this diagnosis, but he prescribed Valium "as needed for muscle spasms." Radiographic studies revealed mild to moderate degenerative and hypertrophic changes. While no mention was made by the radiologist, Dr. Owens noted that the x-ray showed a straightening of the lordotic curve. Appellant was returned to work light duty, but an MRI was subsequently ordered when his pain failed to subside. The MRI report stated that appellant appeared to have herniated discs at L4-5 and L5-S1.

A referral to neurosurgeon Dr. Mason followed, whose diagnostic tests revealed the same suspected herniations. Dr. Mason operated on appellant and, upon viewing appellant's spine, discovered that appellant suffered from spondylosis and facet hypertrophy but did not have herniated discs. After surgery, Dr. Mason assigned appellant an 11 percent permanent anatomical impairment rating to the body as a whole, attributing the rating to surgical changes and degenerative disc problems. This rating was derived from the American Medical Association's *Guides to the Evaluation of Permanent Impairment*, Fourth Edition.

Dr. Mason was asked during a deposition whether appellant's condition was caused by his work, to which he stated that he could not so opine within a reasonable degree of medical certainty; he could only go by the patient's history that he developed pain after the lifting injury. When asked if the work incident worsened his back condition, if it was preexisting, Dr. Mason replied that there was no way to know without comparative diagnostic studies prior to the crosstie-carrying event. He also stated that the development of spondylosis and face hypertrophy was usually a slow process causing degenerative changes. He said, "It's impossible to develop these changes in a short period of time." Dr. Mason further stated, though, that the lifting incident caused more than 50 percent of appellant's problem that necessitated treatment.

The insurance carrier directed appellant to Dr. Saer at the Spine Clinic who opined that his symptoms were most likely related to his persistent degenerative disc disease. Dr. Saer recommended that appellant undergo a lumbar fusion to address the degenerative condition.

Appellant testified that he had worked as a manual laborer since he was about sixteen years old, including working on oil rigs and skidding logs. As a Vietnam veteran, he had undergone treatment for post-traumatic-stress disorder ("PTSD") and mood swings, and he testified that his back condition made him more susceptible to depression since he could not work. At the time of the hearing, appellant was still being medicated for conditions other than his back, all administered by the V.A. Hospital, and had been qualified for total disability due to his PTSD. Appellant admitted in his testimony that he had been treated for muscle spasms after pulling muscles in his back before he began working for Waste Management. Also, he presented to the Medical Center of South Arkansas on July 31, 1993, more than a year prior to the work incident, and reported that he had "chronic back problems." The Commission denied appellant benefits, finding that there was lacking any objective findings to support an injury while at work.

## Merits of the Case

█ It is clear that muscle spasms *can* constitute objective medical findings to support compensability. *See Continental Express, Inc. v. Freeman*, 66 Ark. App. 102, 989 S.W.2d 538 (1999); *University of Arkansas for Medical Sciences v. Hart*, 60 Ark. App. 13, 958 S.W.2d 546 (1997). Muscle spasms detected by someone other than a physician, such as a physical therapist, can be sufficient as well, since this is a perception by someone other than the claimant. *See Continental Express, supra.* The Commission concluded, however, that there was no observation of muscle spasm in appellant because the prescription for Valium "as needed for muscle spasm" was a direction to appellant and not a finding of the presence of muscle spasm. Further, the Commission deemed the treating physician's finding of a straightening of the lordotic curve unreliable because the radiologist did not note that finding in his report.

██ It *is* well settled that the Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force. *Hope Livestock Auction Company v. Knighton*, 67 Ark. App. 165, 992 S.W.2d 826 (1999); *Sapp v. Phelps Trucking, Inc.*, 64 Ark. App. 221, 984 S.W.2d 817 (1998). However, it is also well settled that once an injury is identified by specific incident and time, it is not necessary that the

claimant prove that the work, rather than the injury, was a major cause of the disability and need for treatment. *See Williford v. City of North Little Rock*, 62 Ark. App. 198, 969 S.W.2d 687 (1998); *Second Injury Fund v. Stevens*, 62 Ark. App. 255, 970 S.W.2d 331 (1998); *Medlin v. Wal-Mart Stores*, 64 Ark. App. 17, 977 S.W.2d 239 (1998); *Farmland v. Dubois*, 54 Ark. App. 141, 923 S.W.2d 883 (1996). Further, where there is little or no medical evidence to the contrary, it is error to deny compensability where reasonable minds cannot differ. *See Crudup v. Regal Ware, Inc.*, 69 Ark. App. 206, 11 S.W.3d 567 (2000); *Lloyd v. UPS*, 69 Ark. App. 92, 929 S.W.2d 564 (2000).

Appellant contends that the Commission erred in making a medical finding that because a radiologist did not mention straightening of the lordotic curve, no straightening was present. We agree. Appellant's treating physician found straightening of the curve in the spine, which is a sign that is normally associated with muscle spasm in the straightened area. This finding *is* objective evidence of injury with no evidence to the contrary. Appellee Waste Management asserts that the issue is one of *causal connection* between the lifting at work and the findings at surgery and that no causal connection was established. We disagree.

■ It was undisputed that appellant sustained an accidental injury at work and was diagnosed initially with back strain and received medication. What *is* disputed is whether appellant presented proof of objective medical evidence and whether there was a causal connection between the injury and the medical treatment. We hold that appellant *did* present proof of objective medical evidence and that there *was* a causal connection between the injury and the medical treatment, for the following reasons.

First, he was indisputably diagnosed with back strain for which he received medication after the crosstie incident. The medication was directed "as needed for muscle spasm" which the Commission dismissed as a direction to appellant rather than a medical finding. We find the Commission's dismissal of this fact to be absurd. A doctor would not prescribe medication directed to be taken "as needed for muscle spasm" if he did not believe muscle spasms were existent. Notwithstanding, when the medication did not relieve his pain, an MRI was performed that showed possible herniated discs at L4-5 and L5-S1. He was then referred to a neurosurgeon whose

tests also led him to believe that there were herniated discs present. It was only *during surgery* that the diagnosis of herniations was eliminated. Following surgery, the neurosurgeon attributed 50 percent of appellant's need for treatment to the crosstie accident.

■ Second, under Ark. Code Ann. § 11-9-102 (Supp. 1999), two types of injuries are recognized: accidental and gradual onset. An accidental injury is defined as caused by a specific incident and is identifiable by time and place of occurrence. Ark. Code Ann. § 11-9-102(4)(A)(i). For an accidental injury, it is *not necessary* that the claimant prove that the injury is the major cause of the disability or need for treatment. While it is undisputed that appellant has degenerative disease, the accidental injury at work either *caused* or *precipitated the need for* medication and surgery that is clear. The finding of a straightened lumbar-spine *is* an objective medical finding and, as noted above, this is a sign that is normally associated with muscle spasm in the straightened area. Further, the diagnosis, albeit wrong, that he had herniated discs *caused* surgery to be performed. Therefore, a causal connection did exist between the lifting at work and the findings at surgery.

■ The burden on appellant to prove a compensable injury was by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(4)(E)(i). Based upon this burden of proof, as well as our standard of review of the Commission's decision, we are convinced that fair-minded persons presented with these same facts could not have reached the same conclusion as the Commission. For these reasons, we hereby reverse the Full Commission's decision to deny benefits to Mr. Estridge. Likewise, the Court of Appeals decision, affirming the Full Commission, is hereby reversed.

Reversed.

BROWN, IMBER, and SMITH, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. There is no doubt that substantial evidence exists to support the Workers' Compensation Commission's decision in this case. Contrary to Estridge's representation to his physicians that he had had no prior back problems, this was not true. He had a history of "chronic back problems," as the majority admits, and had been treated several times for pulled muscles and muscle spasms prior to the crosstie incident. Next, as the majority again admits, though Estridge

underwent surgery as the result of an initial diagnosis of herniated discs caused by lifting the crosstie, it developed during the surgery that the real cause of his back problems was a pre-existing degenerative disease. Thus, you have proof positive that Estridge had suffered from chronic back problems prior to the incident and that his ailment was not due to herniation at all but to a degenerative condition.

During deposition, Dr. Zachary Mason, Estridge's surgeon, was asked whether Estridge's degenerative condition was caused by the lifting incident. He answered:

> No, I can't state that within a reasonable degree of medical certainty. I can only go by the patient's history. That is, he developed pain after the lifting incident.

Nor could he state within a reasonable degree of medical certainty that the facet hypertrophy became worse after the lifting of the crosstie. When Dr. Mason later testified that the lifting incident caused more than fifty percent of Estridge's back problem, that opinion appeared to be based on a *disc injury* which did not exist.

We are left then with the prescription of Dr. Douglas Owens for Valium "as needed for muscle spasm" as the sole basis for reversing the Commission. A prescription does not equate to medical findings or evidence of a causal connection between injury and medical treatment. There is no proof that Dr. Owens observed or found muscle spasm following the lifting. And, as already stated, Estridge had a pre-existing history of back problems and muscle spasms.

Our standard of review in Workers' Compensation Commission cases is well established. This court views the evidence in the light most favorable to the Commission's decision and affirms when that decision is supported by substantial evidence. *Tucker v. Roberts-McNutt, Inc.,* 342 Ark. 511, 29 S.W.2d 706 (2000). Substantial evidence exists if fair-minded persons could reach the same conclusion when considering the same facts. *Id.* Stated differently, the issue on appeal is not whether the reviewing court might have reached a different result from that of the Commission or whether the evidence would have supported a contrary finding. If reasonable minds could reach the Commission's conclusion, the court must

affirm its decision. *Hapney v. Rheem Manufacturing Co.*, 342 Ark. 11, 26 S.W.3d 777 (2000).

In a case such as the one at hand, where the Commission denied benefits because the claimant failed to meet his burden of proof, the substantial evidence standard of review requires us to affirm if the Commission's decision presents a substantial basis for denial of relief. *Crudup v. Regal Ware, Inc.*, 341 Ark. 804, 20 S.W.3d 900 (2000). Furthermore, it is within the Commission's sole discretion to determine the credibility of each witness and the weight to be given to their testimony. *Crudup*, 341 Ark. at 809, 20 S.W.3d at 904. As stated by the majority, it is well settled that the Commission has the authority to accept or reject medical opinion and also has the authority to determine the opinion's medical soundness and probative force. *See Tucker*, 342 Ark. 511, 29 S.W.3d 706 (court stated that Commission is not required to believe the testimony of any witness and may accept and translate into findings of fact only those portions of testimony it deems worthy of belief); *see also Hope v. Livestock Auction Company v. Kingston*, 67 Ark. App. 165, 992 S.W.2d 826 (1999).

The point is that the Commission's decision was supported by substantial evidence, and the Commission weighs the credibility of witnesses — not the judiciary. Were I on the Commission, I might have decided this case differently, but our standard of review is whether substantial evidence supports the Commission's decision. In my opinion, it does.

I would affirm the Commission.

IMBER, J., and SMITH, J., join.