FRED'S, INC. and Royal & Sun Alliance Ins. Co. *v.*
Deborah JEFFERSON

04-1085                                             206 S.W.3d 238

Supreme Court of Arkansas
Opinion delivered March 31, 2005

*Roberts Law Firm, P.A.*, by: *Bud Roberts, Jeremy Swearinger,* and *John D. Webster*, for appellants.

*Gary Davis*, for appellee.

ROBERT L. BROWN, Justice. Appellants Fred's, Inc. and its insurer, Royal & Sun Alliance Ins. Co., appeal from an opinion and order of the Workers' Compensation Commission, which found that appellee Deborah Jefferson sustained a compensable injury in the course of her employment on April 25, 2002; that Jefferson remained in her healing period and was unable to earn wages from April 26, 2002 through May 27, 2002; and that Fred's is responsible for all reasonable and necessary medical treatment that Jefferson claimed. We affirm the opinion and order of the Commission.

Deborah Jefferson lived in Osceola and worked for Fred's from August 1997 until she was fired on June 10, 2002. She was employed as a "stock person," which required her to "unload the trucks." That work involved her bending and stooping and lifting objects and also pushing and pulling objects, while remaining on her feet all day.

On April 25, 2002, Jefferson's manager asked her to retrieve some boxes from "upstairs" at the store. Jefferson attempted to comply by standing on a four-foot aluminum ladder, which collapsed while she was standing on it and caused her to land on her back on the concrete floor. Jefferson informed her assistant manager, Ruth Ware, about the accident. Ware directed her to see Dr. Brewer Rhodes.

On that same day, Dr. Rhodes diagnosed Jefferson with a contusion and strain of her spine and prescribed medication for her treatment, including Flexeril, and physical therapy for two weeks.

Jefferson complied with the physical therapy, yet still complained of pain. Dr. Rhodes issued work-restriction certificates that prohibited Jefferson from returning to work until May 27, 2002. Jefferson filed a claim for workers' compensation with Fred's workers' compensation insurance company, and the company denied it.

An Administrative Law Judge (ALJ) next heard Jefferson's claim and issued an order and opinion awarding Jefferson benefits from April 26 through May 27, 2002, for temporary total disability. Fred's appealed that order to the Commission, which affirmed the ALJ's order by a vote of two to one. Fred's appealed to the court of appeals, which affirmed the Commission's order in an unpublished opinion. *See Fred's Inc. v. Jefferson*, CA 04-166 (Ark. App. Sept. 22, 2004). Later, the court of appeals published a substituted opinion on denial of rehearing that also affirmed the Commission's order and cited to the *Physicians' Desk Reference* for the use of Flexeril, which was not adduced by either party in the briefs in this appeal. *See Fred's Inc. v. Jefferson*, 89 Ark. App. 95, 200 S.W.3d 477 (2004).

Fred's filed an amended petition for review with this court raising several issues, including the absence of objective medical findings to prove the injury and violation of due process because the court of appeals relied on the *Physicians' Desk Reference*, although neither party had cited it, argued it, or made it part of the record. We granted the petition.

Fred's first contends on appeal that the Commission erred in concluding that Jefferson sustained a compensable injury, because she failed to produce medical evidence supported by "objective findings," as required by Ark. Code Ann. § 11-9-102(4)(D) (Repl. 2002). Fred's further urges that the Commission erroneously relied on the ALJ's speculation that medicine prescribed to Jefferson was for muscle spasms, because no physician or physical therapist reported witnessing or feeling Jefferson's muscle spasms.

When we grant a petition for review, we consider a case as though it had been originally filed in this court. *See Estridge v. Waste Management*, 343 Ark. 276, 33 S.W.3d 167 (2000). We also view the evidence in a light most favorable to the Commission's decision, and we uphold that decision if it is supported by substantial evidence. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.*

A "compensable injury" is defined under the Workers Compensation Code as

> An accidental injury causing internal or external physical harm to the body ... arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence[.]

Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2002). Section 11-9-102(4) of the Code further provides that a compensable injury must be established by medical evidence supported by "objective findings." *See* Ark. Code Ann. § 11-9-102(4)(D) (Repl. 2002). The Code defines "objective findings" as those "which cannot come under the voluntary control of the patient." Ark. Code Ann. § 11-9-102(16)(A)(i) (Repl. 2002).

In the case of *Estridge v. Waste Management, supra,* this court reversed the Commission's denial of a claimant's benefits and held that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. In *Estridge,* the claimant reported a back injury that occurred on the job to his employer and was referred to a physician, who diagnosed the claimant with low back strain and radicular pain. The physician failed to document any objective medical findings to support the diagnosis but prescribed Valium "as needed for muscle spasms." Ultimately, the Commission denied the claimant benefits, finding that there were no objective findings to support an injury while at work.

On appeal, this court stated that muscle spasms can constitute objective medical findings to support compensability and that muscle spasms detected by someone other than a physician, such as a physical therapist, can be sufficient as well, because this is a perception of injury by someone other than the claimant. The Commission in *Estridge* concluded, however, that there was no observation of muscle spasms in the claimant, because the prescription for Valium "as needed for muscle spasm" was a direction and not a finding of the presence of muscle spasms. This court disagreed and said:

> It was undisputed that appellant [claimant] sustained an accidental injury at work and was diagnosed initially with back strain and received medication. What *is* disputed is whether appellant

presented proof of objective medical evidence and whether there was a causal connection between the injury and the medical treatment. We hold that appellant *did* present proof of objective medical evidence and that there *was* a causal connection between the injury and the medical treatment, for the following reasons.

First, he was indisputably diagnosed with back strain for which he received medication after the crosstie incident. The medication was directed "as needed for muscle spasm" which the Commission dismissed as a direction to appellant rather than a medical finding. We find the Commission's dismissal of this fact to be absurd. A doctor would not prescribe medication directed to be taken "as needed for muscle spasm" if he did not believe muscle spasms were existent.

*Estridge*, 343 Ark. at 281, 33 S.W.3d at 171 (emphasis in original).

In the case at bar, the ALJ found that Jefferson and Fred's had an employee-employer relationship on April 25, 2002, and that Jefferson presented credible, unrefuted testimony about falling from the ladder at Fred's. The ALJ further found:

Dr. Rhodes' notes indicate on April 29, 2002, that "Ruth Ware ok'd" and the treatment was a sonulator. . . . Dr. Rhodes' April 25, 2002, report reveals that the claimant "fell off ladder and back and neck landed on back on concrete floor." . . . I find this contemporaneous medical report corroborates the claimant's account of the accident. Dr. Rhodes diagnosed the claimant with a T-L contusion/strain and prescribed Celebrex and Flexeril and physical therapy. The claimant sought emergency room care on September 30, 2002, and was complaining of muscle spasms in her back. The doctor's notes, while difficult to read, indicate some problem with the paraspinous muscle and drugs were prescribed to include Flexeril, a muscle relaxer and pain medication.

The ALJ concluded that the "medical evidence provides the necessary requirements for objective findings." After Fred's appealed to the Commission, the Commission conducted a *de novo* review of the record and then, in a vote of two to one, affirmed the ALJ's opinion, including all findings of fact and conclusions of law.

We agree with the ALJ's findings and hold that substantial evidence was presented that Jefferson suffered an "accidental injury," as defined by § 11-9-102(4)(A)(i), and that substantial

evidence was presented that Jefferson's compensable injury was established by medical evidence supported by "objective findings," as required by § 11-9-102(4)(D). Jefferson testified that she fell from a ladder while attempting to move boxes at work. Dr. Brewer Rhodes examined Jefferson on April 25, 2002, diagnosed her with "T-L contusion/strain," examined her "T-spine" and "L-spine," prescribed Jefferson with Celebrex and Flexeril, and ordered that Jefferson not engage in bending or lifting more than ten pounds and that she should have a "sitting job only."

Dr. Rhodes's notes also reflect that on April 29, 2002, Dr. Rhodes examined Jefferson again, ordered a "sonulator" and stated that "Ruth Ware [assistant manager] OK'd" the order. His notes further state that Jefferson complained of continued pain, and he scheduled an MRI of her "L-spine." In addition, Dr. Rhodes's notes read that on May 9, 2002, he examined Jefferson and prescribed medication and physical therapy three times a week for two weeks. He added that Jefferson may work at a "sitting job" without lifting, bending, or prolonged standing and that she should continue taking Celebrex. On May 15, 2002, he wrote that Jefferson should continue physical therapy.

Jefferson's evidence of a "compensable injury" was corroborated by an emergency room record from September 30, 2002, in which it was noted that Jefferson complained of back pain and muscle spasms in her lower back from an "old injury." The emergency room record showed that Jefferson was examined, that something was wrong with her bilateral paraspinous muscle, and that she was treated with Vistaril, Lorcet Plus, Flexeril, and Prednisone. She was also given a prescription for Celebrex.

■ The facts in this case are akin to those in *Estridge*. It is undisputed that Jefferson sustained an accidental injury at work and was diagnosed on April 25, 2002, with a back bruise and a strain of her back. As treatment, medication including Flexeril and physical therapy were prescribed. What is disputed here, as was the case in *Estridge*, is whether Jefferson presented proof of objective medical evidence and whether there was a causal connection between the injury and the medical treatment. This case is distinguishable from *Estridge*, however, in that Dr. Rhodes did not indicate specifically what the medications were for or specifically why he prescribed physical therapy. Yet, following the logic expressed in *Estridge*, a reasonable inference from the chronology of events is that the medication and physical therapy were pre-

scribed to aid Jefferson and to treat her injury. Any other construction of these events does not withstand scrutiny or pass the test of reasonableness. We affirm the Commission's order.

Fred's next contends that the Commission erred in awarding Jefferson temporary total disability benefits from April 25 to May 27, 2002, because Jefferson failed to present evidence that she was in her "healing period," as defined by Ark. Code Ann. § 11-9-102(12) (Repl. 2002), or that she was totally incapacitated from earning wages. To support these arguments, Fred's again claims that Jefferson failed to show any objective findings of an injury and that she failed to present evidence to indicate that her pre-injury position at Fred's was outside her work restrictions, that she was unable to secure another position at Fred's within her restrictions, or that she would have been more capable of working after she started looking for work on June 10, 2002, than while she was employed by Fred's.

This court has said that "temporary total disability" is that period within the "healing period" in which the employee suffers a total incapacity to earn wages. *See Arkansas State Hwy. & Transp. Dept. v. Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981). Our Workers' Compensation Code defines a "healing period" as "that period for healing of an injury resulting from an accident." Ark. Code Ann. § 11-9-102(12) (Repl. 2002).

The ALJ found that Fred's was responsible for all reasonable and necessary medical treatment that Jefferson pursued and that Jefferson proved by a preponderance of the evidence that she remained in her healing period and was unable to earn wages from April 26 through May 27, 2002. Specifically, the judge wrote:

> In the present case, the claimant presented credible testimony about her inability to work following her April 25, 2001, [*sic*] fall off the ladder. The record is further supplemented with medical evidence and off work slips with a May 15, 2002, note from Dr. Rhodes taking the claimant off work until May 27, 2002, specifically stating "no work." . . . Dr. Rhodes had provided work certificates on other occasions where he had placed the claimant under limitations of "no lifting, bending or standing and only a sitting job." The employer did not return the claimant to work with those restrictions because the nature of the claimant's job required all those activities that the doctor had placed on restriction. I find the claimant has proven by a preponderance of the evidence that she remained in her healing period and was unable to earn wages from April 26, 2002 through May 27, 2002. . . .

Again, the Commission conducted a *de novo* review and adopted the ALJ's findings of fact.

We hold that Jefferson presented substantial evidence that she was temporarily totally disabled from the time of injury until the day she was released to return to work on May 27, 2002. Specifically, Jefferson testified that her job as a stock person required her to bend, stoop, lift, push, pull, and be on her feet all day. In the past, she also worked at Fred's at times as a cashier. However, Jefferson testified that Fred's did not have a sitting job available during her healing period. The evidence shows that Dr. Rhodes issued a certificate on April 25, 2002, stating that Jefferson was able to return to work on April 29, 2002, but could not bend or lift anything greater than ten pounds and that she was restricted to a sitting job for three days. In addition, Dr. Rhodes certified on May 9, 2002, that Jefferson could not lift, bend, or stand, and, for a second time, limited her to a sitting job. Finally, Dr. Rhodes completed a workers' compensation evaluation sheet on May 15, 2002, stating that Jefferson could not return to work until May 27, 2002. This is substantial evidence that Jefferson was entitled to temporary total disability benefits. We affirm the Commission on this point.

Fred's argued to this court in its amended petition for review that the court of appeals' reliance on the *Physicians' Desk Reference* to determine the use of the drug Flexeril was extra-judicial, violated Fred's procedural due process rights, and violated Ark. Code Ann. § 11-9-705(a)(3) (Repl. 2002), and *Polk County v. Jones*, 74 Ark. App. 159, 47 S.W.3d 904 (2001). In particular, Fred's took issue with the following statement in the court of appeals decision, which was taken from the *Physicians' Desk Reference*:

> Flexeril "is indicated as an adjunct to rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."

*Fred's, Inc.*, 89 Ark. App. at 99, 200 S.W.3d at 479 (quoting *Physicians' Desk Reference* 572 (56th ed. 2002)). Fred's underscores the fact that neither party referred to the *Physicians' Desk Reference* in the briefs filed in this appeal.

We do not address this issue for the simple reason that other than raising the issue in its amended petition for review, Fred's did not file a supplemental brief developing the issue or

otherwise cite this court to relevant authority to support its position. This, we require. *See Hart v. McChristian,* 344 Ark. 656, 42 S.W.3d 552 (2001) (we do not consider an argument made without convincing argument or citation to authority to support it, where it is not apparent without further research that these arguments are well-taken); *Matthews v. Jefferson Hosp. Ass'n,* 341 Ark. 5, 14 S.W.3d 482 (2000) (this court will not consider the merits of an argument if the appellant fails to cite convincing legal authority in support of that argument). Accordingly, this issue is not preserved for our review, and we affirm on this point. Though we do not reach this point, we do not mean by our silence to sanction implicitly the court of appeals' citation to the *Physicians' Desk Reference,* when it had not been adduced or argued by either party in the briefs.

Affirmed.