Cite as 2025 Ark. App. 249

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-24-310

| | |
|---|---|
| | Opinion Delivered April 23, 2025 |
| NUCOR YAMATO STEEL CO. AND ARCH INSURANCE CO.<br>APPELLANTS/CROSS-APPELLEES | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| V. | [NO. H004171] |
| JOSHUA SHELTON<br>APPELLEE/CROSS-APPELLANT | AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

**CASEY R. TUCKER, Judge**

Appellants/cross-appellees Nucor Yamato Steel Co. and Arch Insurance Co. (collectively, "Nucor") appeal the decision of the Arkansas Workers' Compensation Commission finding that appellee/cross-appellant, Joshua Shelton ("Shelton"), suffered a compensable back injury on June 25, 2020, and is entitled to medical treatment. We affirm the Commission's decision on direct appeal.

Appellee/cross-appellant Shelton filed a cross-appeal asking this court to reverse the Commission's decision (a) finding that Shelton was not entitled to temporary total-disability (TTD) benefits; and (b) finding that Shelton was entitled to only $500 in attorney's fees. We affirm the Commission's decision on cross-appeal.

I. *The Incident*

On June 25, 2020, Shelton, during the course and scope of his employment with Nucor as a caster inspector, tripped and fell while stepping over a roll line and injured his back ("the Incident"). Shelton had previously sustained a non-work-related injury and had undergone back surgery in 2018. Shelton testified that at the time of the Incident, he was symptom-free from his previous injury. Shelton was initially seen by Dr. Riley Jones of OrthoSouth, who evaluated him and based upon Shelton's complaints and history, had him undergo x-rays, prescribed a Medrol pack,[1] and scheduled an MRI. Dr. Jones recommended Shelton remain off work. Shelton's MRI report contained findings of mild degenerative change at L5-S1 but no disc herniation, dural sac compression, or nerve root impingement. Shelton began physical therapy on June 29, 2020, and was placed on restricted duty. Dr. Jones diagnosed Shelton with a lumbar sprain and prescribed Flexeril.

On July 20, 2020, Shelton returned to OrthoSouth with complaints of back pain and was treated by Dr. Christopher Ferguson, who took him back off work and changed his medicine. Shelton saw Dr. Jones on July 31 and August 14, 2020, and was kept off work, prescribed Robaxin for muscle spasms, and referred to physical therapy four times a week.

Shelton saw Dr. Todd Fountain on September 24, 2020. Dr. Fountain kept Shelton off work and recommended he see a pain specialist for a facet test and a radiofrequency

---

[1]Dr. Jones noted that Shelton was already taking the prescription drug Flexeril, which was later mentioned in the records as being prescribed for plantar fasciitis, not for low back pain.

ablation for facet arthropathy at L4-5 and L5-S1. Shelton returned to Dr. Jones during this time and was released from his care on November 10, 2020, to return to work with no restrictions.

Shelton reported that he followed up with Dr. Jay McDonald, a pain-management doctor, who performed medial branch nerve blocks of his L4-5 and L5-S1. Dr. McDonald released Shelton on September 13, 2021, with work restrictions. Then, on September 30, 2021, Shelton returned to the clinic complaining of back pain, which resulted in Dr. McDonald's placing him on sedentary duty. Shelton received a lumbar epidural steroid injection on November 11, 2021.

On December 7, 2021, Dr. McDonald recommended a psychological evaluation and spinal-cord stimulator. Nucor denied coverage of medical payments for the recommended psychological evaluation and spinal cord stimulator. On December 24, Dr. Jones signed a Form AR-3 Physician's Report setting forth his diagnosis as "[s]pondylosis without myelopathy or radiculopathy, lumbar region" and that, as of December 22, 2021, Shelton was at maximum medical improvement (MMI), having reached the end of his healing period. Despite being released from treatment, Shelton continued to follow up with his doctors. He saw Dr. Jones again on January 11, 2022. The medical records from that visit reflect a diagnosis of lumbar sprain but stated no work restrictions. Again, Shelton was discharged from his care as having reached MMI.

Until January 10, 2022, Nucor had accepted Shelton's indemnity claim and had paid Shelton TTD benefits. Shelton continued to see Dr. McDonald, who opined in February

3

2022 that Shelton remained a candidate for a spinal-cord stimulator. Shelton had a psychological evaluation, which confirmed that he was a candidate for the spinal-cord stimulator.

On June 27, 2023, Dr. McDonald, in response to a questionnaire, stated that he was treating Shelton for muscle spasms and an aggravation of epidural fibrosis because of a work injury.

## II. *Workers'-Compensation Proceedings*

### A. The Administrative Law Judge Opinion

Prior to the hearing before the administrative law judge ("ALJ"), the parties stipulated that an employee/employer relationship existed on June 25, 2020, when Shelton sustained an injury to his back and that he had earned an average weekly wage that entitled him to benefits of $711 and $533 for temporary and permanent partial-disability benefits. The parties agreed that the ALJ was to decide the following issues: "(1) Whether [Shelton] is entitled to additional reasonably necessary medical treatment previously denied by [Nucor]; (2) Whether [Shelton] sustained a compensable back injury on June 25, 2020 and is entitled to appropriate benefits associated therewith; (3) Whether [Shelton] is entitled to temporary total disability benefits from June 25, 2020, through a date to be determined; and (4) Attorney's fees with respect to controverted indemnity benefits."

The hearing was held on July 28, 2023. In a written opinion filed on August 22, the ALJ found that Shelton proved by a preponderance of the evidence that he had sustained a

compensable injury on June 25, 2020 and that his injury was established by medical evidence supported by objective findings.

The ALJ found that Shelton was entitled to reasonably necessary medical care in relation to his compensable back injury, which included the recommended psychological evaluation and the spine stimulator that Nucor declined to cover. The ALJ ruled that Shelton was entitled to TTD benefits from June 25, 2020, until a date to be determined. Given this ruling concerning the TTD benefits, the ALJ awarded Shelton attorney's fees for all indemnity benefits that should have been paid.

## B. The Commission Opinion

Nucor timely appealed the ALJ opinion to the Commission. It argued that the ALJ erred in finding (1) that Shelton's claim was a compensable injury; (2) that Nucor was responsible for the unpaid medical treatment; (3) that Shelton was entitled to the controverted TTD benefits; and (4) that Nucor owed attorney's fees with respect to the controverted TTD benefits. On March 7, 2024, the Commission, in a 2–1 decision with a written dissent, affirmed the ALJ opinion on all issues except the TTD award. The Commission reversed the ALJ's finding that Shelton was entitled to TTD benefits, but it did not address the attorney's fees—other than awarding Shelton attorney's fees of $500 because he was partially successful.

Shelton filed a motion to modify on March 12, 2024, with respect to the issue of attorney's fees. On April 2, Nucor filed a notice of appeal of all the Commission's decisions against Nucor. On April 4, Shelton filed a notice of cross-appeal with respect to the

5

Commission's decision on TTD benefits and also addressed its motion to modify filed with the Commission. On April 11, the Commission entered an order denying the motion to modify, and Shelton amended his notice of appeal to include the denial of attorney's fees with respect to the controverted TTD.

### III. *Standard of Review*

In appeals involving workers' compensation claims, this court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission. *Id.* Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Greene Cnty. Judge v. Penny*, 2019 Ark. App. 552, at 10, 589 S.W.3d 478, 485.

### IV. *Analysis*

#### A. Direct Appeal

##### 1. *Compensable injury*

In its first point on appeal, Nucor contends that substantial evidence does not support the Commission's finding that Shelton sustained a compensable back injury. Arkansas Code Annotated section 11-9-102(4)(A)(i) (Repl. 2012) provides in pertinent part:

6

Compensable injury means: (i)[a]n accidental injury causing internal or external physical harm to the body . . . arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence[.]

A compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D). Objective findings are those findings which cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i).

With respect to Shelton's injury, the Commission held:

Muscle spasms can constitute objective medical findings to support compensability. *Estridge v. Waste Management*, 343 Ark. 276, 33 S.W.3d 167 (2000), citing *Continental Express, Inc. v. Freeman*, 66 Ark. App. 102, 989 S.W.2d 538 (1999). In the present matter, Dr. Jones diagnosed "Lumbar Sprain" following the accidental injury, and he prescribed Robaxin "for muscle spasms." The Full Commission finds in the present matter that the treating physician's diagnosis of "Lumbar Sprain" accompanied by a prescribed treatment of medication for "muscle spasms" is sufficient to establish objective findings of a compensable injury. *See Bradford v. Stracener Bros. Const.*, 2021 Ark. App. 316, citing *Melius v. Chapel Ridge Nursing Ctr., LLC*, 2021 Ark. App. 61, 618 S.W.3d 410.

The Full Commission finds that the claimant proved by a preponderance of the evidence that he sustained a compensable injury. The claimant proved that he sustained an accidental injury causing physical harm to the body. The claimant proved that the injury arose out of and in the course of employment, required medical services, and resulted in disability. The injury was caused by a specific incident and was identifiable by time and place of occurrence on June 25, 2020. The claimant also established a compensable injury by medical evidence supported by objective findings, namely Dr. Jones' prescription of medication for muscle spasms following the accidental injury. We find that these objective findings reported by Dr. Jones were causally related to the June 25, 2020 compensable injury and were not caused by a prior injury or pre-existing condition.

7

Nucor maintains that the Commission erred in finding that Shelton's medical evidence was supported by objective findings. Specifically, Nucor contends that none of the medical testing revealed a new injury, and none of Shelton's physicians palpated Shelton's back or found muscle spasms on examination. They further argued that he was taking the muscle relaxer Flexeril before the Incident.

Nucor urges us to reverse *Melius*, 2021 Ark. App. 61, 618 S.W.3d 410, which is directly on point. In *Melius*, this court found that the appellant's diagnosis of muscle strain along with prescribed treatment of medications, physical therapy, and pain management were enough to establish objective findings. We decline to reverse well-established precedent. *See Fred's, Inc. v. Jefferson*, 361 Ark. 258, 206 S.W.3d 238 (2005).

This court has held there is no requirement that a doctor, a physical therapist, or other medical provider observe a patient's muscle spasm before the injury can be compensable. *See Estridge, supra*. Dr. Jones diagnosed Shelton with a lumbar sprain, and Shelton was given multiple prescriptions to treat "muscle spasms" throughout the course of his treatment. A doctor would not prescribe medications for muscle spasms if the doctor did not believe muscle spasms were present. *Id.* Dr. McDonald stated in response to a questionnaire dated June 27, 2023, that Shelton was being treated for muscle spasms. Various doctors prescribed different medicine for pain relief and muscle spasms and also prescribed physical therapy.

In sum, we agree with Shelton's argument that his diagnosis of lumbar sprain along with the prescribed course of medications for muscle spasms, physical therapy, and pain

management is sufficient to establish objective findings. Nucor argues that Shelton had been taking Flexeril at the time of the Incident, which would suggest he was still having back pain. This argument has no merit. It was uncontested that Shelton had fully recovered from his back surgery and had not sought treatment for his back since the surgery. Moreover, the medical records stated he was taking Flexeril for plantar fasciitis—not for back pain. Substantial evidence supports the Commission's finding that Shelton sustained a compensable injury on June 25, 2020.

## 2. *Medical benefits*

Nucor paid for Shelton's medical treatment through December 7, 2021, but controverted future medical benefits. The Commission affirmed the ALJ's decision that due to Shelton's compensable injury sustained on June 25, 2020, he was entitled to reasonably necessary medical treatment, which included a spinal-cord stimulator and a psychological evaluation.

It is within the Commission's province to weigh all the medical evidence and determining what is most credible. *Minn. Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999). Regarding the spinal-cord stimulator, the Commission found that the opinions of three treating physicians that Shelton needed the stimulator were entitled to significant evidentiary weight. Accordingly, the Commission found that the spinal-cord stimulator was reasonably necessary in accordance with Ark. Code Ann. § 11-9-508(a) (Repl. 2012). Given our deference to the Commission with respect to evidentiary and credibility issues, we affirm

the Commission's finding that a spinal-cord stimulator is reasonably necessary in accordance with Ark. Code Ann. § 11-9-508(a).

## B.  Cross Appeal

### 1.  *TTD benefits*

The Commission overturned the ALJ's finding that Shelton was entitled to TTD benefits from June 25, 2020, until an undetermined future date. TTD is the period within the healing period that an employee suffers a total incapacity to earn wages.  Ark. Code Ann. § 11-9-102(12). The determination of when the healing period ends is a question of fact for the Commission. *K II Constr. Co. v. Crabtree*, 78 Ark. App. 222, 79 S.W.3d. 414 (2002).

Nucor did not contest the payment of TTD benefits until the period after December 22, 2021, which was the date Dr. Jones determined Shelton had reached the "maximum medical improvement date (end of healing period)."[2] The Commission found that Shelton did not re-enter a healing period after December 22, 2021, despite Dr. McDonald's June 27, 2023 response to a questionnaire stating that Shelton was not at MMI. The Commission clearly gave Dr. McDonald's response to the questionnaire concerning Shelton's healing period very little evidentiary weight.

---

[2]Though Nucor did appeal both the ALJ's and the Commission's opinions finding that there was a compensable injury, the parties stipulated before the hearing in front of the ALJ that Nucor was contesting only the TTD payments being sought by Shelton beginning on December 22, 2021. Accordingly, the "controverted period" for TTD payments began on December 22, 2021.

It is well settled that with respect to the credibility of the witnesses and the weight to be given their testimony, the appellate court is bound by the Commission's decision. *Sheridan Sch. Dist. v. Wise*, 2021 Ark. App. 459, 637 S.W.3d 280, 289. We therefore affirm the Commission's decision in Nucor's favor that Shelton's TTD benefits were properly terminated on December 22, 2021.

## V. *Attorney's Fees*

The attorney's fees awarded by the ALJ were directly tied to the controverted TTD benefits. The Commission awarded Shelton attorney's fees in the amount of $500,[3] but because Shelton did not prevail on the award of TTD benefits, the Commission correctly determined he is not entitled to additional attorney's fees pursuant to Ark. Code Ann. § 11-9-715(a)(2)(B)(ii) (Repl. 2012). Because we affirm the Commission's decision with respect to the denial of the controverted TTD benefits, we also affirm with respect to the denial of the related attorney's fees.

Affirmed on direct appeal; affirmed on cross-appeal.

HARRISON and BARRETT, JJ., agree.

*Michael E. Ryburn*, for appellants.

*Caldwell Law Firm, P.A.*, by: *Andy L. Caldwell*, for appellee.

---

[3]The award of $500 is not at issue on appeal.