
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-17-206

| | |
|---|---|
| WALL FARMS, LLC, AND RIVERPORT INSURANCE COMPANY<br><br>APPELLANTS<br><br>V.<br><br><br>JEFF HULSEY AND LIBERTY MUTUAL INSURANCE COMPANY<br>APPELLEES | **Opinion Delivered:** November 15, 2017<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NOS. G503617, G403473]<br><br><br><br>AFFIRMED ON DIRECT APPEAL;<br>AFFIRMED ON CROSS-APPEAL |

## KENNETH S. HIXSON, Judge

This is a workers' compensation case. The appellants are Wall Farms, LLC (Wall Farms), and its current insurance carrier, Riverport Insurance Company (Riverport Insurance). The appellees are Jeff Hulsey and Wall Farms' former insurance carrier, Liberty Mutual Insurance Company (Liberty Mutual). Mr. Hulsey was an eight-year employee of Wall Farms. Mr. Hulsey was involved in a job-related accident on April 23, 2014, and another job-related accident four months later on August 14, 2014. Mr. Hulsey brought a workers' compensation claim alleging that he sustained compensable lower back injuries on April 23, 2014 (when Liberty Mutual was providing coverage), and on August 14, 2014 (when Riverport Insurance was providing coverage). Both insurance carriers controverted the claim.

After a hearing, the Workers' Compensation Commission found that Mr. Hulsey failed to prove that he sustained a compensable injury on April 23, 2014, while Liberty

SLIP OPINION

Mutual was providing coverage. However, the Commission did find that he proved a compensable injury on August 14, 2014, while Riverport Insurance was providing coverage. The Commission awarded Mr. Hulsey reasonable medical treatment, as well as temporary total disability benefits from October 6, 2014, through November 6, 2014. The Commission found that because Riverport Insurance was Wall Farms' insurance carrier at the time of the August 14, 2014 compensable injury, Riverport was responsible for providing all of the workers' compensation benefits.

Wall Farms and Riverport Insurance now appeal, arguing that the Commission's findings were not supported by substantial evidence, the Commission misapplied the law to the facts of the case, and the Commission's findings did not support the award. Mr. Hulsey has cross-appealed, arguing that the Commission's denial of temporary total disability benefits beyond November 6, 2014, was not supported by substantial evidence. We affirm on direct appeal and we affirm on cross-appeal.

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. *Evans v. Bemis Co., Inc.*, 2010 Ark. App. 65, 374 S.W.3d 51. This court must affirm the decision of the Commission if it is supported by substantial evidence. *Id*. Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion of the Commission. *Id*. We reverse the Commission's decision only if we are convinced that fair-minded persons could not have reached the same conclusion with the same facts before them. *Id*. Questions regarding the credibility of

witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id.*

Mr. Hulsey testified that he helped maintain a cattle operation for Wall Farms. He stated that his job was physically demanding and that, prior to April 23, 2014, he had no physical limitations and no lower back problems.

Mr. Hulsey testified that, while working on April 23, 2014, he fell about four feet to the ground off a spray rig and twisted when he landed. Mr. Hulsey worked about another hour and then called his boss, Adam Wall, and reported that he had hurt his back. Mr. Hulsey stated that, after that day, he attempted to return to regular duty but missed ten days of work, although they were not consecutive. Mr. Hulsey did not seek medical treatment until May 19, 2014, when he visited a chiropractor, Dr. Chris Curtis. During that visit, Mr. Hulsey wrote on a registration-and-history form that the reason for his visit was back pain and that his symptoms appeared "a while ago." In answering whether his condition was due to an accident, Mr. Hulsey checked both the "yes" and the "no" boxes and wrote "unsure." Mr. Hulsey also wrote on the form, "fell at work two weeks ago." In his report, Dr. Curtis noted "low back pain past 2 weeks with no cause. Pt states has had back problems in the past." Dr. Curtis's radiology report indicated that there was "hypo" lordosis in the alignment of Mr. Hulsey's spine, with no further comment.

Mr. Hulsey testified that he was able to function but remained sore until his next injury on August 14, 2014. Mr. Hulsey stated that, on August 14, 2014, he was bush hogging and ran into a hole, which "whipped [him] to the left and jerked [him] around." Mr. Hulsey stated that, after this injury, the pain was much worse, radiating further up his

back, down into his hip, with excruciating pain in his right leg. Mr. Hulsey stated that he dealt with the pain after his first injury, but after the second injury he had to do something. Mr. Hulsey went to the doctor on the day of the August 14, 2014 accident. He was off work for several days after the accident, and then returned to work for only a couple days per week before discontinuing his work altogether on October 6, 2014.

The August 14, 2014 medical report indicated that Mr. Hulsey reported that he had been suffering from back pain for months. The report further stated that the symptoms began when Mr. Hulsey fell off a wagon and had progressed with him experiencing numbness in his left leg and arm. Cecil Massey, an advanced practice registered nurse, examined Mr. Hulsey's back and reported paralumbar muscular spasms.

An MRI of Mr. Hulsey's lumbar spine was performed on August 18, 2014. The MRI report noted that Mr. Hulsey had slipped and fallen two months ago. The MRI detected disc bulges at L3−L4 and L4−L5, as well as a disc bulge and herniation at L5−S1.

After the MRI, Cecil Massey, APRN, referred Mr. Hulsey to St. Bernard's Neurosurgery Clinic, and Mr. Hulsey was seen by Dr. John Campbell on October 6, 2014. Mr. Hulsey then reported that he was injured on the job "late spring went to Doc 8-14-14." In Dr. Campbell's report, he stated that Mr. Hulsey was hurt on the job earlier that year when he fell off a piece of equipment, and had injured himself again a few weeks ago when he was bush hogging, apparently hit a rut or hole, and was jerked severely. Dr. Campbell reviewed the MRI, set up physical therapy for Mr. Hulsey, and stated that Mr. Hulsey could also consider surgical intervention. Dr. Campbell later signed a slip stating, "No work for one month. 10-6-2014 thru 11-6-2014."

Dr. Jared Seale, with Arkansas Specialty Orthopaedics in Little Rock, evaluated Mr. Hulsey on June 15, 2015. Dr. Seale reported that Mr. Hulsey originally hurt his back in April 2014 when he fell off a spray rig, and then reinjured it in August 2014 when he was bush hogging and hit a hole and was jerked sideways. Dr. Seale stated that Mr. Hulsey's symptoms began after the work injury, and further reported:

> [I]t is with a certain degree of medical certainty that at least 51% of the patient's current symptoms are directly related to his work injury. Thus I do believe his treatment should be supported by Workers' Compensation and not his private insurance.

Adam Wall, the owner of Wall Farms, testified that he recalled Mr. Hulsey reporting a lower back injury on April 23, 2014. Mr. Wall stated that he encouraged Mr. Hulsey to seek medical care at that time, but that Mr. Hulsey said he did not need to go to a doctor and did not have insurance. According to Mr. Wall, Mr. Hulsey also stated that he did not seek medical treatment because he could not pass a drug test. Mr. Wall testified that Mr. Hulsey was a very good worker, but that he never returned to his full duties after the initial April 23, 2014 injury.

In the Commission's opinion, it found that Mr. Hulsey failed to prove by a preponderance of the evidence that he sustained a compensable injury on April 23, 2014. The Commission found, *inter alia*, that Mr. Hulsey did not establish an injury on that date by medical evidence supported by objective findings. The Commission specifically stated that it did not find Dr. Curtis's description of "hypo" lordosis in the alignment of Mr. Hulsey's back to be objective medical evidence establishing a compensable injury on April 23, 2014.

The Commission did, however, find that Mr. Hulsey proved a compensable injury sustained on August 14, 2014. In finding compensability, the Commission explained:

> The claimant testified that, while operating a "bush hog" implement, he fell into a hole, was "whipped to the left," and "jerked." The claimant testified that he felt instant acute pain in his back as a result of the August 14, 2014 incident. The claimant sought medical treatment the same day and was assessed with "Lumbar radiculopathy." An APRN examined the claimant and reported "paralumbar muscle spasms." Muscle spasms constitute objective medical findings. *See Continental Express, Inc. v. Freeman*, 339 Ark. 142, 4 S.W.3d 124 (1999). Dr. Campbell treated the claimant on October 6, 2014 and corroborated the claimant's testimony that the claimant had been "jerked very severely" as a result of the August 14, 2014 specific incident. Like the APRN, Dr. Campbell assessed lumbar radiculopathy and arranged conservative treatment.
>
> We find that the claimant proved he sustained a compensable injury on August 14, 2014. The claimant proved that he sustained an accidental injury causing physical harm to the body. The injury arose out of and in the course of employment, required medical services, and resulted in disability. The injury was caused by a specific incident and was identifiable by time and place of occurrence on August 14, 2014. The claimant established a compensable injury by medical evidence supported by objective findings, namely, the medical provider's report of spasm on August 14, 2014. We find that the report of muscle spasm was causally related to the injury occurring August 14, 2014.

The Commission found that Mr. Hulsey was entitled to workers' compensation benefits, to be covered by Riverport Insurance, which was providing insurance coverage on August 14, 2014, when the compensable injury occurred. The Commission awarded medical benefits as well as temporary total disability benefits from October 6, 2014, through November 6, 2014, which correlated with the off-work slip signed by Dr. Campbell.

In this appeal, Wall Farms and its current insurance carrier, Riverport Insurance, argue that the Commission's findings regarding the compensability of Mr. Hulsey's injury are not supported by substantial evidence, that the Commission misapplied the law to the facts, and that the Commission made insufficient findings to support its award. The

SLIP OPINION

SLIP OPINION

appellants contend that the Commission disregarded evidence and erroneously concluded that Mr. Hulsey did not sustain a compensable injury when he fell off the sprayer on April 23, 2014. The appellants assert that the evidence showed that Mr. Hulsey sustained a compensable injury on April 23, 2014, when Wall Farms was covered by Liberty Mutual, and that he did not sustain a compensable injury on August 14, 2014, when Wall Farms was covered by Riverport Insurance.

In Arkansas workers' compensation law, a compensable injury includes accidental injuries that cause physical harm requiring medical services or resulting in disability when they occur in the course of employment. Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2012). Compensable injuries must be established by medical evidence supported by objective findings, Ark. Code Ann. § 11-9-102(4)(D), and objective findings are those that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i).

The appellants argue that there was nothing to support the Commission's finding that Mr. Hulsey failed to prove that a compensable accidental injury occurred on April 23, 2014, given that Mr. Hulsey testified to such an event, the medical records documented the accident, and Wall Farms' owner did not dispute that it happened. Appellants further assert that, after the April 23, 2014 accident occurred, Mr. Hulsey immediately experienced back pain that never went away. Although Mr. Hulsey sought medical treatment on August 14, 2014, which was the day of the alleged second injury, appellants note that the medical documentation from that day, as well as four days later when the MRI was performed, documented only a fall from a water wagon two months prior with no indication of a recent accident. As such, appellants argue that the Commission not only erred in finding the April

23, 2014 injury to be noncompensable, but further erred in finding that Mr. Hulsey proved a compensable injury occurring on August 14, 2014.

Appellants also challenge the Commission's finding that Mr. Hulsey failed to establish a compensable injury on April 23, 2014, by medical evidence supported by objective findings. Appellants posit that the "hypo" lordosis diagnosed by chiropractor Dr. Curtis on May 19, 2014, was an objective finding supporting this first injury.

We hold that the Commission's findings as to the date of compensability were supported by substantial evidence and that the Commission made sufficient findings to support the award. Contrary to the appellants' argument, we conclude that the Commission did not err in finding that Mr. Hulsey failed to prove a compensable injury on April 23, 2014, because of a lack of objective medical findings to support it. Although Dr. Curtis detected "hypo" lordosis in an examination almost a month after that accident, Dr. Curtis gave no indication that this condition was causally related to the accident, or even caused by a traumatic event.

In support of its claim that "hypo" lordosis was an objective finding supporting compensability, appellants rely on *Estridge v. Waste Management*, 343 Ark. 276, 33 S.W.3d 167 (2000), and *Fred's Inc. v. Jefferson*, 361 Ark. 258, 206 S.W.3d 238 (2005). In *Estridge*, the supreme court held that straightening of the curve in the spine was an objective finding supporting a back injury in that case because this finding is normally associated with muscle spasm, and the doctor there prescribed medication "as needed for muscle spasm." In *Fred's Inc.*, the supreme court held that there were objective findings to support a back injury where the claimant complained of muscle spasms in her back, the medical documentation

indicated a problem with the paraspinous muscle, and Flexeril was prescribed to treat the condition. In the case at bar, appellants contend that, as in *Fred's Inc.*, the claimant was prescribed Flexeril, which appellants claim was indicative of objective findings.

We conclude that the cases cited by the appellants are distinguishable from this case. In both *Estridge* and *Fred's Inc.*, there was evidence that medication had been prescribed to treat muscle spasms, and muscle spasms are objective findings. *See Cont'l Express, Inc. v. Freeman*, 339 Ark. 142, 4 S.W.3d 124 (1999). In the present case, there was no indication that Mr. Hulsey complained of back spasms to Dr. Curtis or that Dr. Curtis detected back spasms or prescribed treatment for them. Although appellants assert that Dr. Curtis prescribed Flexeril, our examination of the record indicates only that Mr. Hulsey reported to Dr. Curtis that he was already taking Flexeril on the chiropractic registration-and-history form. This is consistent with Mr. Hulsey's testimony, which was that he took Flexeril to rest but that it had not been prescribed to him. On this record, reasonable minds could conclude that the "hypo" lordosis detected by Dr. Curtis was not an objective finding causally related to the April 23, 2014 accident, and therefore the Commission did not err in finding that no compensable injury occurred on that date.

Further, we conclude that substantial evidence does support the Commission's finding that Mr. Hulsey proved that he sustained a compensable injury on August 14, 2014. Mr. Hulsey testified that on that date he was jerked around while bush hogging, which resulted in back, hip, and leg pain that was much worse than before. Unlike after the April 23, 2014 incident, Mr. Hulsey immediately sought medical treatment on August 14, 2014, when he was diagnosed with paralumbar muscle spasms, which are objective medical

findings. Four days later, an MRI detected two bulging discs and one herniated disc. Mr. Hulsey was off work for several days after the August 14, 2014 accident, worked only a couple days per week after that, and quit working on October 6, 2014, as a result of the injury. We hold that there was substantial evidence that Mr. Hulsey proved a compensable injury on August 14, 2014, which arose out of the employment, caused physical harm requiring medical services and resulting in disability, and was supported by objective medical findings. For these reasons, we affirm on direct appeal the Commission's finding that Riverport Insurance is responsible for Mr. Hulsey's workers' compensation benefits arising from the August 14, 2014 injury.

We now turn to Mr. Hulsey's cross-appeal. In his cross-appeal, Mr. Hulsey argues that the trial court erred in limiting his temporary total disability benefits to the one-month period from October 6, 2014, through November 6, 2014. Mr. Hulsey contends that he should be entitled to temporary total disability benefits through a date yet to be determined.

Temporary total disability is appropriate during the healing period in which an employee suffers a total incapacity to earn wages. *Cranford v. Superior Indus.*, 2009 Ark. App. 738, 361 S.W.3d 290. The healing period is that period for healing of an accidental injury and will continue until the employee is as far restored as the permanent character of his injury will permit, and ends when the underlying condition causing the disability has become stable and no treatment will improve that condition. *Mad Butcher, Inc. v. Parker*, 4 Ark. App. 124, 628 S.W.2d 582 (1982). The claimant has the burden to show that he remains in the healing period by a preponderance of the evidence. *Hickman v. Kellogg, Brown & Root*, 372 Ark. 501, 277 S.W.3d 591 (2008).

10

When a claim for benefits is denied by the Commission, the substantial-evidence standard of review requires that we affirm if the Commission's opinion contains a substantial basis for the denial of relief. *Powers v. City of Fayetteville*, 97 Ark. App. 251, 248 S.W.3d 516 (2007). We hold that the Commission's opinion displays a substantial basis for limiting Mr. Hulsey's temporary total disability benefits to the period from October 6, 2014, through November 6, 2014.

The thrust of Mr. Hulsey's argument is that he is entitled to continuing temporary total disability because he remains in his healing period. However, this argument is unconvincing because the Commission made no finding as to whether Mr. Hulsey remained in his healing period or needed further treatment. Instead, the Commission found that there was no medical evidence that Mr. Hulsey was incapacitated from earning wages after November 6, 2014, based on the only medical document addressing the issue, which was an off-work slip from Dr. Campbell taking Mr. Hulsey off work from October 6, 2014, through November 6, 2014. Being that there was no medical opinion expressing that Mr. Hulsey was incapacitated from work at any time after November 6, 2014, and no doctor took him off work beyond that date, we affirm the one month of temporary total disability awarded by the Commission.

Affirmed on direct appeal; affirmed on cross-appeal.

GLADWIN and GLOVER, JJ., agree.

*Roberts Law Firm*, by: *Terry Don Lucy*, for appellants.

*Wells & Wells, PLLC*, by: *Phillip Wells*, for appellee.