Cite as 2020 Ark. App. 444

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV-20-172

| | | |
|---|---|---|
| DANIEL J. POTTER | | **OPINION DELIVERED:** SEPTEMBER 30, 2020 |
| | APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G900892] |
| V. | | |
| KELLY SERVICES, INC.; ESIS, INC.; AND DEATH AND PERMANENT TOTAL DISABILITY TRUST FUND | | |
| | APPELLEES | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Daniel Potter appeals the February 20, 2020 opinion of the Arkansas Workers' Compensation Commission (Commission), which unanimously affirmed and adopted the November 26, 2019 opinion of the administrative law judge (ALJ) in finding that he failed to prove by a preponderance of the evidence that (1) the requested additional medical treatment is reasonable and necessary for the treatment of his admittedly compensable back injury sustained on May 31, 2018, or (2) he is entitled to temporary total-disability (TTD) benefits from June 4–14, 2018, and March 11, 2019, through a date yet to be determined. For his sole argument on appeal, appellant argues that the Commission's opinion was not supported by substantial evidence. We affirm.

### I. *Facts and Procedural History*

Potter, then fifty years old, sustained an admittedly compensable injury to his back on May 31, 2018, while working for appellee Kelly Services, Inc. (Kelly Services), a

temporary employment agency. Specifically, Potter was working on assignment at a warehouse unloading trucks for Ashley Furniture. As he pulled down a dresser with no assistance, he injured his back experiencing shooting pain down his right side and difficulty walking.

Potter reported the incident to his supervisor, and Kelly Services sent him to its doctor, Dr. Duane Lukasek, on June 4. Dr. Lukasek diagnosed Potter with muscle spasms and a back contusion and instructed him to work restricted duty for seven days. Although Potter denied receiving the instructions, Dr. Lukasek also recommended range-of-motion and back exercises at home and set a follow-up visit on June 11—that visit never happened.

Kelly Services accepted Potter's back injury as compensable and paid certain benefits but later controverted his entitlement to additional medical treatment and TTD benefits because there was a period of approximately eight months during which he did not receive treatment for his back.

A hearing was held before the ALJ on September 10, 2019. Potter testified that he presented his restricted-duty note from Dr. Lukasek to Kelly Services but initially was told there was no modified-duty work available. However, Kelly Services sent Potter a letter dated June 13 instructing him that modified-duty work would be available as of June 14. Glenda Keeter, the staffing supervisor for Kelly Services, attempted to contact Potter by phone and email prior to sending the June 13 letter because she had modified-duty work within his restrictions available. Potter ignored the offers of modified-duty work, did not contact Keeter, and eventually abandoned his position with Kelly Services and accepted employment elsewhere. Although there is no evidence as to the exact date Potter received

that letter, he did admit to having received it. It is undisputed that Potter did not work between June 4 and 14.

Potter did not pursue any treatment for his back until he sought chiropractic treatment almost eight months later in January 2019. Potter did, however, attend multiple medical visits at the Veteran's Administration (VA) during that eight-month period, but the records reflect no mention of any back pain or back issues during five separate VA visits between November 15 and 19, 2018; December 20; 2018; January 2, 2019; and January 18, 2019. Specifically, on November 15, 2018, Potter presented to establish care with complaints of chest pain, nausea, and headaches, but no complaints of back pain or back issues. The physician's physical-examination record from that visit noted: "Spine, no tenderness"; and "[e]xtremity, no leg edema no calf tenderness."

Potter claimed that during the eight-month period, his back pain worsened to the point that he could hardly move. In an effort to explain the contradictions between his purported worsening back problems and lack of treatment or mention of symptoms over the eight-month period, Potter initially testified that he did not report these problems to the VA because he did not know if he was allowed to report work-related issues. But then Potter admitted that he sought medical treatment at the VA for work-related injuries to his arms and hands (with no mention of back pain or back issues) while working for Logistics Warehouse on January 18, 2019. During that VA visit, Potter also reported doing "physical things around the house to exhaust himself" so he could sleep at night. He also reported that he was to start a new job the very next day, on January 19, 2019, at Mars Petcare.

Within a couple of days of starting that job, and after approximately eight months with no treatment or mention of back problems, Potter sought chiropractic care from Dr.

3

Balkman on January 22, 2019. Despite his claim that at that time, he could barely walk, there is no mention of any acute injury or work-related incident in the chiropractic notes. Potter testified that he believed the chiropractor simply failed to document his reporting of the May 31, 2018 incident. Potter testified that these visits did not help his condition but rather made it worse.

On January 28, Potter—for the first time—sought treatment for his back at the VA. Although he disputes it, the physician included the following history:

> Walk-in patient of Dr. Anna [] with complaints of *5-month history of right lower back pain* that radiates down the right posterior thigh to the right calf and the mainly to the right great toe but sometimes the whole foot . . . . Saw chiropractor last week which made his pain worse. *Works as a manual laborer lifting a lot. Pain worsened quite a bit 2 weeks ago.* States he fell and landed on a step on the lower lumbar area about 2 years ago[1] *but no other acute injuries he can remember.*

(Emphasis added.) Although Potter disputes this history, he acknowledged that he reported no symptoms just ten days earlier during his January 18 VA visit. He also admitted there was no mention of the May 31, 2018 back injury. Potter ultimately admitted that his condition had changed vastly between January 18 and 29, 2019. He testified:

Q.    Don't you agree that your condition changed dramatically between January 18th and January 28th? I mean up to that point, you had been doing some construction work, doing busy stuff around the house, working several jobs, and then suddenly you go in on January 28th and you can't walk hardly. You are using a cane.

A.    Do I agreed that it changed?

Q.    Yes, sir.

A.    Yes, I agree.

Q.    Okay. Has any doctor somehow connected this way back to the May 31st

---

[1]Although not specified in this record, Potter indicated that the fall was caused during the winter of 2017 when he slipped on a quarter-size piece of ice and hit a step.

4

incident?

A. No.

Potter could not recall where he was working as a manual laborer just a couple of weeks before this appointment or five months before when his reported history stated that his back pain had begun. Potter testified that the physician correctly reported the fall from two years ago but that the physician incorrectly reported his increase in symptoms from two weeks earlier or the start of symptoms five months earlier.

Potter's purported worsening back condition stemming from his May 31, 2018 injury was contradicted by his post accident work history. Potter admitted that he returned to the workforce shortly after abandoning his position with Kelly Services. Potter acknowledged that he had worked for at least six different temporary agencies between June 2018 and March 2019. He worked as an insulator for about three weeks before quitting and admitted that his quitting that job had nothing to do with his back. Potter also acknowledged that he had worked as a manufacturer, as a forklift driver, and for a company that painted stripes on parking lots. Potter admitted on cross-examination that he performed full-duty work and never told anyone that he had any work restrictions.

After abandoning his position with Kelly Services, Potter filed for unemployment benefits with two subsequent employers—Penmac Staffing on August 31, 2018, and Express Staffing on November 11, 2018. Despite his alleged ongoing back complaints, Potter denied having any disabilities that would limit his ability to perform normal jobs in both applications for unemployment benefits. In each application, Potter stated he could begin work immediately and work full time.

After examining the testimony and documentary evidence, the ALJ concluded that Potter was not credible and had failed to meet his burden of proving an entitlement to additional medical or TTD benefits in an opinion filed on November 26, 2019. The Commission unanimously affirmed and adopted the ALJ's decision in its opinion filed on February 20, 2020. Appellant filed a timely notice of appeal on February 24.

II. *Standard of Review and Applicable Law*

When the Commission adopts the ALJ's opinion, it makes the ALJ's findings and conclusions its findings and conclusions. *White Cty. Judge v. Menser*, 2020 Ark. 140, at 6, 597 S.W.3d 640, 644. We consider both the ALJ's opinion and the Commission's majority opinion. *Id.*, 597 S.W.3d at 644. When the Commission denies benefits because a claimant has failed to meet his or her burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Id.*, 597 S.W.3d at 644. We view the evidence in the light most favorable to the Commission's decision and affirm if it is supported by substantial evidence, which is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* at 7, 597 S.W.3d at 644. The issue on review is not whether the evidence would have supported a contrary finding or whether we might have reached a different result; we affirm if reasonable minds could reach the Commission's conclusion. *Id.*, 597 S.W.3d at 644. We defer to the Commission on issues involving credibility and the weight of the evidence. *Id.*, 597 S.W.3d at 644.

A compensable injury, pursuant to Arkansas Code Annotated section 11-9-102(4)(A)(i) (Supp. 2019), is defined as "[a]n accidental injury causing internal or external physical harm to the body . . . arising out of and in the course of employment and which

6

requires medical services or results in disability or death. An injury is 'accidental' only if it is caused by a specific incident and is identifiable by time and place of occurrence[.]" The Arkansas Workers' Compensation Act provides that for a compensable injury, "[a]n employer shall promptly provide for an injured employee such medical . . . services . . . as may be reasonably necessary in connection with the injury received by the employee." Ark. Code Ann. § 11-9-508(a). Any determination of the existence or extent of physical impairment shall be supported by objective and measurable physical or mental findings. Ark. Code Ann. § 11-9-704(c)(1)(B); *Multi-Craft Contractors, Inc. v. Yousey*, 2018 Ark. 107, 542 S.W.3d 155. TTD is appropriate during the healing period in which an employee suffers a total incapacity to earn wages. *Wall Farms, LLC v. Hulsey*, 2017 Ark. App. 624, 534 S.W.3d 771.

## III. *Discussion*

Potter argues that the Commission's decision that he is not entitled to TTD benefits from June 4 to June 14, 2018, and March 11, 2019, to a date yet to be determined and his current need for additional medical treatment is not causally related to the compensable injury is not supported by substantial evidence. Potter submits that at the time he sought additional medical and TTD benefits, he had the same objective findings and symptoms as his last authorized treatment and that there is no evidence that he injured himself subsequent to the initial compensable back injury.

### A. Additional Medical Treatment

Potter claims that he did not return to see Dr. Lukasek on June 11, 2018, because he felt that Dr. Lukasek was rude and hateful and thought that Potter was only seeking medications despite Potter's urging that was not the case. Although Potter concedes that

7

between June 14, 2018, and January 2019 he accepted employment at several full-duty jobs with no indication that he had any work restrictions, he maintains that there was no evidence presented that he injured himself at any subsequent job. Potter submits that he did not have any independent intervening events and submits that his back injury just gradually worsened.

Potter urges that the Commission overlooked a complaint of back pain that he made to the VA on November 15, 2018. Potter states that he was there to establish care, his progress note indicated that he appeared to be "having pain today," and the description indicated "back." At that visit, Potter was scheduled for four additional visits to the VA for a stress test, psychiatric treatment, and an ultrasound. He claims those are the other VA appointments that Kelly Services is using to imply that he was going to the doctor but not complaining of back pain. Potter submits that is a disingenuous argument as evidenced by his initial VA report of November 15, 2018, when he did complain about his back pain.

Potter argues that a complete review of his medical records clearly indicates that he timely related his complaints of his work-related injury to Kelly Services. When he first saw Dr. Lukasek on June 4, 2018, he complained of low back pain radiating into his right hip with documented muscle spasms. At his initial visit to the VA on November 15, 2018, he complained of back pain. At his chiropractor visit on January 22, 2019, he complained of low back pain that was radiating, and those complaints continued at his January 23 and 24 chiropractor visits. He then went to the VA on January 28, 2019, complaining of a "5-month history of right lower back pain that radiates down the right posterior thigh to the right calf and then mainly to the great toe but sometimes the whole foot." He was noted to have muscle spasms as of January 30, 2019. When Potter went for his physical-therapy

8

assessment at the VA on February 21, 2019, he gave a detailed history of his pain and how it related back to his work with Kelly Services. That history is referred to throughout the remainder of his treatment records. The MRI ultimately showed that Potter has a herniated disc at L4–5 with "swollen" nerve roots at L5.

Potter points out that he initially had objective findings of injury in the way of muscle spasms after he sustained the admittedly compensable injury. He urges that he tried to work through the pain and hoped that his condition would improve. When it did not, he returned for additional treatment, still had the same objective findings, and after an MRI, he was diagnosed with a herniated disc with nerve root involvement. Potter reiterates that he has not injured himself anywhere else or had any independent intervening incidents. He concludes by stating that there is no evidence that his injury and ongoing need for treatment are related to anything other than his initial admittedly compensable back injury.

We disagree. Potter bears the burden to establish by a preponderance of the evidence that the treatment is reasonable and necessary and bears a causal connection to the work injury. *Tyson Poultry, Inc. v. Montelongo*, 2019 Ark. App. 535, at 7, 589 S.W.3d 449, 453. He is only entitled to treatment that is causally related to the compensable injury. *Id.*

Causation often comes down to a decision on the credibility of the claimant; medical evidence on causation is not required in every case. *Greene Cty. Judge v. Penny*, 2019 Ark. App. 552, at 13–14, 589 S.W.3d 478, 487. Moreover "the Commission is not required to believe the testimony of the claimant or other witnesses but may accept and translate into findings of fact only those portions of testimony it deems worth of belief." *Marshall v. Ark. Dep't of Corr.*, 2020 Ark. App. 112, at 5, 594 S.W.3d 160, 163. Moreover, the testimony of

9

an interested party is always considered to be controverted. *W.L. Harper Co. v. Woods*, 2016 Ark. App. 431, at 10.

Potter essentially argues that his current back problems are a continuation of the minor back injury sustained on May 31, 2018. But after listening to the testimony and evidence, the ALJ found his argument to be without merit, and the Commission affirmed.

Although Potter testified that he experienced increasingly worsening back problems following the incident on May 31, 2018, stating that he could "barely move" and had trouble walking, he chose not to return to the follow-up appointment with Dr. Lukasek on June 11. Moreover, although Potter sought treatment on at least five occasions at the VA from November 2018 through January 2019, he admitted he did not seek back treatment once during that time. In an effort to refute this absence of treatment, Potter points to the one brief mention of back pain while at the VA on November 15, 2018. But he fails to acknowledge that the same report also says that he stated that his "Primary Care Provider is NOT aware of pain" and that "[t]his pain has been present for: Up to 3 months." The same physician's physical examination noted "spine: no tenderness" and "extremity, no leg edema no calf tenderness." This single mention of his back on November 15, 2018 does not negate the vast inconsistencies in his testimony and the absence of evidence suggesting his current back problems are related to his May 31, 2018 injury. Nor does this one mention of back pain support a finding that the Commission's decision was not supported by substantial evidence—especially because Potter indicated that he had been experiencing the pain for "up to three months," which would be August 2018. What he sustained on May 31, 2018, was not a dramatic long-lasting back injury; Dr. Lukasek restricting his work duties for only seven days.

On January 22, 2019, although Potter sought chiropractic and medical treatment for his back, he denied any acute injuries, never mentioned the incident on May 31, 2018, and instead related his symptoms to manual labor performed at one of several employment positions that he held after voluntarily abandoning his position with Kelly Services. Potter reported that he had a five-month history of back pain (i.e., July 2018) with worsening symptoms following manual labor two weeks prior to the visit (i.e., January 2019).

As noted in the opinion, in a failed attempt to overcome these inconsistencies, Potter tried to convince the ALJ that his own physicians were told about his May 31, 2018 injury but, for unknown reasons, chose not to include that information in his medical history. He insinuates that they conspired to defeat his claim by omitting this information. And now, on appeal, he also argues the reason there is no mention of his ongoing back problems in the VA reports is because the other VA visits were "specialized" and unrelated to his back.

Although Potter testified that his back condition caused significant pain and limited his ability to move such that he could "barely move," he acknowledged that he managed to work for at least six separate temporary agencies performing a variety of full-time, labor-intensive tasks. Despite not holding any position for long, Potter admitted his separation from each of those positions had nothing to do with his back. Potter also acknowledged that he performed the necessary job duties for each of the employers with no work restrictions. Moreover, on two separate occasions in August 2018 and again in November 2018, Potter indicated in separate applications for unemployment benefits that he had no disabilities that would prevent him from performing normal job duties.

Potter impermissibly attempts to shift his burden of proving an entitlement to additional treatment to Kelly Services to prove that he sustained a subsequent, intervening

11

injury. He maintains that because he denied any subsequent injury and refuted the medical reports establishing back problems from work in January 2019, the Commission erred in refusing to award additional benefits. We disagree and hold that the Commission properly considered and rejected Potter's explanation. Considering the testimony and evidence in the light most favorable to Kelly Services, it is clear that fair-minded persons could have reached the Commission's decision. Accordingly, the Commission's findings regarding additional treatment must be affirmed.

## B. TTD Benefits

Next Potter argues that the Commission's opinion regarding his requested TTD benefits is based on misrepresentations, factual errors, and speculation. He takes issue with the Commission's finding that he did not return to work for Kelly Services even though modified-duty work within his restrictions was offered. He submits it is undisputed that Kelly Services did not initially make an offer of available modified-duty work when he reported back with the restrictions from Dr. Lukasek and that the June 13 letter from Kelly Services indicated that such work would be available as of June 14, 2018. Accordingly, Potter maintains that he is entitled to TTD benefits from June 4 to 14, 2018.

Potter also claims that the Commission's opinion incorrectly states that he was never taken off work. He notes that the VA records clearly indicate in his VA progress notes as early as March 11, 2019, that he was unable to work. Potter also points out that VA progress notes indicate that there was a discussion on May 8, 2019, with Dr. Kyle about sending Potter for a functional capacity evaluation to see what he could do, but it was determined that he was unable to work. Potter argues that his May 31, 2018 compensable back injury

never healed, and he claims that he is entitled to additional TTD benefits from June 4 to 14, 2018, and from March 11, 2019, to a date yet to be determined.

We disagree and note specifically, with respect to Potter's claims of entitlement to TTD benefits, that the Commission unanimously affirmed and adopted the ALJ's findings:

> Here, the claimant was never taken off work. He was placed on restricted duty for seven days. The evidence presented reflects that the claimant was offered work by the respondents and that he did not return to work. He furthermore confirmed that he left the employ of the respondent and went to work for several different employers after the June 2018 medical treatment he received. The claimant was never totally incapacitated to earn wages, he was never taken off work by a doctor—he was not totally incapacitated to earn wages. Therefore, the claimant here has failed to prove by a preponderance of the evidence that he is entitled to temporary total disability for the dates requested.

The Commission exercised its exclusive authority to make credibility determinations and resolve conflicting testimony. *See Menser*, *supra*. Although he attempts to justify the numerous inconsistencies and contradictions in his testimony, none of Potter's arguments support a reversal of the Commission's decision.

Potter was placed on modified-duty work from June 4 to June 11, 2018, which equates to seven days of restricted modified-duty work. Arkansas Code Annotated section 11-9-501 provides that "compensation to the injured employee shall not be allowed for the first seven (7) days' disability resulting from the injury." Accordingly, Kelly Services urges that subsection 501(a)(2) provides that compensation will commence on the ninth day. Potter was not on modified-duty work beyond the statutory waiting period. Accordingly, for this reason alone, substantial evidence supports the Commission's opinion regarding the first period of TTD benefits requested. Moreover, the credible testimony accepted by the Commission established that Kelly Services offered modified-duty work to Potter. Yet, he admittedly chose to abandon his position and seek employment elsewhere. Potter is not

13

otherwise entitled to benefits based upon his refusal pursuant to Arkansas Code Annotated section 11-9-526.

Finally, as illustrated above, any alleged TTD benefits after June 11, 2018, were unrelated to his minor compensable back injury of May 31, 2018. As illustrated above, Potter failed to prove that his current condition, alleged need for treatment, and inability to work were related to his minor compensable back injury on May 31, 2018. Because the Commission's denial of his request for TTD benefits was supported by substantial evidence, its opinion on this issue must be affirmed as well.

Affirmed.

VIRDEN and WHITEAKER, JJ., agree.

*Caldwell Law Firm, P.A.*, by: *Andy L. Caldwell*, for appellant.

*Mayton, Newkirk & Jones*, by: *L. Eric Newkirk*, for appellees Kelly Services, Inc., and Esis, Inc.