Cite as 2021 Ark. App. 312

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-20-588

| | |
|---|---|
| ROBERTA JONES | **Opinion Delivered** September 1, 2021 |
| APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION, [NO. G802022] |
| V. | |
| EMBASSY SUITES, LITTLE ROCK; STATES NATIONAL INSURANCE COMPANY; AND DEATH & PERMANENT TOTAL DISABILITY TRUST FUND | |
| APPELLEES | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Roberta Jones appeals the Arkansas Workers' Compensation Commission's (Commission's) finding that she failed to establish that she sustained a compensable injury working for Embassy Suites. On appeal, Jones argues that the Commission erred in failing to credit the opinion of Dr. Bruffett and that the Commission's decision was not supported by substantial evidence. We affirm.

I. *Facts and Procedural History*

Jones was employed by Embassy Suites as a server during breakfast. Jones alleges that she injured her spine during the breakfast service on March 9, 2018, when she attempted to lift a coffee pot "weighing 15 to 20 pounds" onto a counter and heard a "pop" in her neck. She was seen by Dr. Olivia Xu-Cai at University of Arkansas for Medical Sciences (UAMS) on March 13 and presented with "neck pain since the fall" and "pain on back from C7 to

lumbar."[1] Dr. Xu-Cai noted that Jones had pain when she tilted her head to the right side and that pain would radiate from her neck to her arm to her hand along with numbness in her middle and fourth right finger. Jones was diagnosed with cervical radiculopathy and lumbar pain with radiation down her right leg. Dr. Xu-Cai ordered MRIs of her cervical and lumbar spine and x-rays of her cervical spine, lumbar spine, and thoracic spine. The x-ray of her cervical spine showed straightening of the normal cervical lordosis. Dr. Xu-Cai's notes do not mention the coffee-pot incident. Dr. Xu-Cai recommended that Jones rest at home through March 30. Jones was seen by Dr. Xu-Cai on March 20, March 29, April 12, April 26, June 4, and July 2 for continued treatment.

Jones's employer sent her to Velocity Care on March 14 for a workers'-compensation visit after Jones had informed her supervisor of her alleged injury. Jones presented at this visit with complaints of constant pain on the right side of her neck, arm, and hand, which she explained "was not the result of an injury" and had started three days prior after washing out a coffee pot. She was diagnosed with radiculopathy of the cervical region and strain of unspecified muscle, fascia, and tendon of right shoulder and upper arm. Jones was prescribed Medrol, diclofenac potassium, and baclofen for pain and placed on a lifting restriction of fifteen pounds or less until March 21.

On March 28, Dr. Manoj Kumar performed the MRI on Jones's cervical spine, which showed a reversal of the normal cervical lordosis with mild kyphosis at C4-6, along

---

[1]Jones had previously been seen at the UAMS Emergency Department on January 5, 2018, for a fall/facial injury. An x-ray of Jones's lumbar spine was performed on February 1 and noted that Jones had fallen the month before suffering low back pain, radiating to her right thigh ending at her knee.

with multilevel degenerative changes that included moderate to severe thecal sac compression at C6-7.

On April 18, Jones was seen by Dr. Johnathan Goree at UAMS and presented with a new onset right side cervical radicular pain. Dr. Goree's notes stated that "this started in March when she was lifting a large coffee carafe at work" and that Jones said "it is associated with pain in her arm and with weakness in her right hand." An epidural steroid injection at C7-T1 was scheduled for Jones.

Jones was seen by Dr. Antonio Howard at UAMS on June 5. Jones reported to Dr. Howard that she had constant pain, "though [it] waxes and wanes" in her cervical radiculopathy since March 2018 after lifting a heavy coffee pot onto a counter. She described her pain as burning in her right neck and shoulder area. She told Dr. Howard that her prior steroid injection relieved her pain for about one week.

Dr. Howard's report included the following relevant statements:

- The mechanism for the most recent injury (March 2018) is suspicious for a partial rotator cuff tear on the right side. She also seems to complain more of pain with reaching or lifting tasks. She does not demonstrate a drop arm suggestive of a complete tear.

- The exam however is significantly limited by symptom magnification, positive stimulation and distraction tests, complaints of regional weakness or sensory changes which deviate from accepted neuroanatomy. For example, she is able to move her neck freely and without evidence of pain from side to side/up and down during the interview. But, when asked to range her neck she demonstrates a slow agonizing movement that barely moves past midline on the right. She has giveway weakness in BOTH upper extremities. Perhaps slightly more on the right side. But this varies with distraction.

- The MRI of her neck does show some adjacent level spondylosis and stenosis which is also consistent [with] the history of shooting pain to both shoulders and down the right arm.

3

- Specific to her function and work readiness, this is truthfully difficult to assess in the clinic due to reasons outlined above. It is also unclear from the interview whether she feels she is limited more by the new UE pain and weakness or by the chronic pain in her lower back. From her chart, it appears that she has had limitations at work (with lifting, vacuuming and other tasks) due to her back pain for quite some time. So that her complaints of being unable to complete these tasks may not at all be related to the most recent injury. She appeared in clinic, well dressed and without obvious impairment of gait. She described some difficulty with overhead tasks but operates at the level of her chest/abdomen without obvious difficulty. She is observed to be moving her neck freely without the neck brace. My gross assessment would be that she should be able to perform all walking/sitting tasks, desk work, and light lifting. She reports that her job does not want her to return until she can lift 15 lbs or more. A functional capacity evaluation may yield more objective information, but she is unlikely to give a sincere effort even with that.

On June 7, Jones was seen by Dr. Thomas Pait at UAMS. Dr. Pait recorded the following history:

> Roberta Jones is a 63-year old right-handed woman with a history of a right anterior approach to the cervical spine for a C4-C5 fusion in 1995. She reports she was doing well until she was involved in to [sic] episodes relating to trauma and arduous activities. In January 2018, she apparently fell at a convenient store/gas station. In March 2018, she was lifting heavy items at work. She presents with pain and spasms in both shoulders with radiation discomfort into the right upper extremity with numbness in her hands. Right > Left. . . . Recent MRI demonstrated the C4-5 anterior fusion in adjacent level degenerative changes.

Dr. Pait reviewed Jones's options with her and suggested that she continue to wear the cervical collar and avoid arduous activities. On July 4, Dr. Pait recommended that Jones have cervical spine surgery.

On July 12, Jones was seen by Dr. Reza Shahim for a pain-management evaluation and what Jones described as "what she thinks is a work-related injury." She presented with complaints of neck pain, right shoulder pain, and right arm pain. Dr. Shahim's notes indicate

that the symptoms had been present now for a few months since "the injury in 01/2018." He prescribed Jones Neurontin and a Medrol Dosepak to help relieve her symptoms.

On January 2, 2019, Jones obtained an independent medical evaluation from Dr. Wayne Bruffett. Dr. Bruffett's medical notes describe Jones's medical history as "rather complex" and included a September 2016 injury to her lower back and the March 2018 injury "lifting a coffee pot that she said weighted approximately 20 pounds." Dr. Bruffett reported that he thought she was on light duty at the time of this injury. He also mentioned Jones's January 2018 fall but noted that "she says that has nothing to do with her current complaints." Dr. Bruffett concluded that, based on Jones's history, medical records, and objective imaging, there is evidence of an acute cervical injury related to the March 9, 2018 job accident within a reasonable degree of medical certainty.

A hearing was held before the ALJ on September 6, 2019. Jones testified that she sustained an injury while she was setting up coffee machines on March 9, 2018. She stated that she already had an injury when she was asked by a supervisor—who was aware of her lifting restrictions from a prior work injury—to work the coffee. Jones responded by asking "the lady if she was really serious." She said she tried to get the coffee pot onto the counter, and she heard a pop in her neck and described the pain as excruciating. Jones then testified that her supervisor was out of the office the day of this incident and had taken the weekend off. She claimed that the injury occurred between 9:30 and 10:00 a.m. "because that's when we start serving breakfast," although her shift was 5:30 a.m. until 12:30 p.m. Jones admitted that she did not report her injury immediately to her supervisor because it occurred over the weekend, and she had to wait until the HR office was open. She testified that the injury

5

occurred on March 9, which was a Friday, and that she filled out an injury report the following Monday.

Jones testified that she had not returned to work since the injury. She tried to return, but they could not find anything for her to do. She was not aware of any job that she was able to do within her job restrictions. When asked about a job at the front desk, Jones said that would involve too much standing and would hurt her lower back; however, she admitted that her medical records do not have any limitations related to standing. Jones testified that the medical records of her initial visit to Dr. Xu-Cai on March 13 were inaccurate. She disputed the report that she had fallen while lifting the coffee pot or that she had been injured washing the coffee pot. In an effort to explain the contradictions between her version of events and the lack of any medical records mentioning her being injured by lifting a coffee pot or hearing a pop, Jones simply stated that she told Dr. Bruffett she was injured by lifting the coffee pot and felt an immediate pop. She said that she told Dr. Xu-Cai about the coffee-pot incident and that she must have not written it down. Subsequent to the hearing, correspondence from Dr. Bruffett dated March 26, 2019, was made part of the record. Answering a question presented by counsel for respondents, Dr. Bruffett stated that if the medical history he had obtained from Jones was determined materially inaccurate then his opinion of causation "might well be different."

The administrative law judge (ALJ) found that Jones did not prove by a preponderance of the evidence that she had sustained a compensable injury to her cervical spine. The ALJ found that Dr. Xu-Cai's report—the first time Jones sought treatment for this injury—did not mention a coffee-pot incident or anything that had happened on her

6

job.  The report stated that Jones had been having "[n]eck pain since fall," and evidence showed that this was a fall she suffered on January 1, 2018, when she slipped on ice at a gas station and hit her face.  The ALJ found that the only way to find that Jones's injury arose out of and in the course of her employment at Embassy Suites would be through speculation and conjecture.  Because of this finding, the ALJ held the remaining issues—whether Jones was entitled to reasonable and necessary medical treatment, temporary total-disability benefits and a controverted attorney's fee—to be moot and declined to address them.  Jones appealed to the Commission, which affirmed and adopted the ALJ's opinion in its opinion filed July 23, 2020.  Arkansas law permits the Commission to adopt the ALJ's opinion as its own.  *Potter v. Kelly Servs., Inc.*, 2020 Ark. App. 444, 610 S.W.3d 670.  If the Commission adopts the ALJ's opinion, the ALJ's findings of fact and conclusions of law are made the Commission's findings of fact and conclusions of law, and this court considers both the ALJ's opinion and the Commission's majority opinion on appellate review.  *Id.*

II.  *Standard of Review and Applicable Law*

In appeals involving workers'-compensation claims, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence.  *Marshall v. Ark. Dep't of Corr.*, 2020 Ark. App. 112, 594 S.W.3d 160.  Substantial evidence exists if reasonable minds could reach the Commission's conclusion.  *Id.*  The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission; if so, the appellate court must affirm.  *Id.*  When the Commission denies a claim due to the claimant's

7

failure to meet his or her burden of proof, the substantial-evidence standard of review requires this court to affirm the Commission's decision if the opinion displays a substantial basis for the denial of relief. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Fred's, Inc. v. Jefferson*, 361 Ark. 258, 206 S.W.3d 238 (2005).

A compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D) (Supp. 2019). "Objective findings" are those findings that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i). The burden of proving a specific-incident compensable injury is the employee's and must be proved by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(4)(E)(i).

Questions concerning the credibility of the witnesses and the weight given to their testimony are within the exclusive province of the Commission. *Grantham v. Hornbeck Agric. Grp., LLC*, 2017 Ark. App. 520, 529 S.W.3d 666. Once the Commission has made its decision on issues of credibility, the appellate court is bound by that decision. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Marshall*, 2020 Ark. App. 112, at 5, 594 S.W.3d at 163. Moreover, the testimony of an interested party is always considered to be controverted. *Potter*, 2020 Ark. App. 444, 610 S.W.3d 670.

8

Jones argues that the Commission erred in failing to credit the opinion of Dr. Bruffett in its decision to deny compensability. She contends that the medical history he received was not inaccurate and included her prior cervical fusion at C4-5 in 1995, her low back injury in September 2016, her fall in January 2018, and the March 9 coffee-pot incident. The Commission found that it was unable to give the same credit to Dr. Bruffett's opinion due to his statement that his opinion of Jones's condition "might well be different" if the medical history he obtained by Jones was "materially inaccurate." Furthermore, Jones's representation to Dr. Bruffett that her January 2018 fall had nothing to do with her current complaints was contrary to her medical records. In fact, Jones did not mention this March 9 injury in her first five visits to UAMS on March 13, 20, 28, and 29, and April 12. The first time Jones mentioned this March 9 injury with the coffee pot was over five weeks later, on April 18, when she was seen by Dr. Goree at UAMS. Dr. Goree's notes indicate that Jones presented with a new onset of right cervical radicular pain that began on March 11, 2018. Dr. Howard's June 5 medical records indicated that Jones's exam was "significantly limited by symptom magnification, positive stimulation and distraction tests, complaints of regional weakness or sensory changes which deviate from accepted neuroanatomy." Thus, the Commission found that the only way to prove Jones's injury arose out of and in the course of her employment was through speculation and conjecture, which is no substitute for proof.

Here, the Commission exercised its exclusive authority to make credibility determinations and resolve conflicting testimony. Although Jones attempts to justify the

numerous inconsistencies and contradictions in her testimony and the record, none of her arguments support a reversal of the Commission's decision. The Commission obviously did not believe Jones's explanation that her cervical injury was causally connected to the March 9, 2018 coffee-pot incident. We are not convinced that fair-minded persons with the same facts before them could not have reached the same conclusion as the Commission.

Jones also argues that she proved by a preponderance of the evidence that she has a compensable injury to her neck that was aggravated by lifting the coffee pot. She claims that even if she had fallen on ice and hit her face and felt some pain in her neck, she was able to return to work until she "lifted the coffee pot weighing approximately 20 lbs. when she heard a pop in her neck." Jones failed to make this argument to the Commission. In order to preserve an issue for appellate review in a workers'-compensation case, it is the party's responsibility to present the issue to the Commission and obtain a ruling. *Univ. of Cent. Ark. v. Srite*, 2019 Ark. App. 511, 588 S.W.3d 849. Because Jones's argument is not preserved, we do not need to address it.

Affirmed.

VIRDEN and VAUGHT, JJ., agree.

*Sheila F. Campbell, P.A.*, by: *Sheila F. Campbell*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Lee J. Muldrow* and *Gary D. Marts, Jr.*, for appellees.